**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 16 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ELSIE HILLIARD HILLMAN; C.G.
GREFENSTETTE, trustees of the Henry Lea
Hillman Trust U/A dated 11/18/85 (the "Henry
L. Hillman Trust"), trustee for Juliet Lea
Hillman, trustee for Audrey Hilliard Hillman
Trust, trustee for Henry Lea Hillman, Jr. Trust,
trustee for William Talbott Hillman Trust;
EDWARD A. CRAIG, III, trustees U/A/T
dated 8/28/68 for Juliet Lea Hillman (the "Juliet
Lea Hillman Trust"), trustees U/A/T dated
8/28/68 for Audrey Hilliard Hillman (the
"Audrey Hilliard Hillman Trust"), trustees
U/A/T dated 8/28/68 for Henry Lea Hillman,
Jr. (the "Henry Lea Hillman, Jr. Trust"),
trustees U/A/T dated 8/28/68 for William
Talbott Hillman (the "William Talbott Hillman
Trust"); AXTON CANDY & TOBACCO
COMPANY, INC.; JAMES M. CAPLINGER;
ROBERT C. CARSON TRUST; THOMAS W.
CHISHOLM; DONALD W. FISHER; LINDA
N. FISHER; CHARLES L. HUGHES; JSM
VENTURES, INC., on behalf of itself and all
others similarly situated; ALFRED A. KERAN;
MED JAMES, INC.; JOSEPH MIGLIOZZI;
AVIS MILLER; LOIS H. MITCHELL, on
behalf of herself and all others similarly
situated; ERNEST L. PRIEN; ASHER Z.
RABINOWITZ; T.S.M. INVESTMENT
CORPORATION PROFIT SHARING PLAN;
WDM GRAND PARTNERS; PAUL A.
WISCHMEYER; AC, a California limited
partnership; ALEXIS TELLIS; LOUISE
MIGLIOZZI,
        Plaintiffs-Appellees,

WILMINGTON SECURITIES, INC.; HENRY
L. HILLMAN; HENRY LEA HILLMAN
TRUST U/A DATED 11/18/85; JULIET LEA
HILLMAN TRUST; AUDREY HILLMAN

TRUST; HENRY LEA HILLMAN, JR.
TRUST; WILLIAM TALBOTT HILLMAN
TRUST,
      Plaintiffs-Counter-Defendants-
      Appellees,

               v.

ROY A. WEBLEY, BARBARA S.
BARNARD,
      Defendants,

LARRY H. WELCH, MAURIE R.
CALDWELL, JR.,
      Defendants-Counter-Claimants,

            and

COOPERS & LYBRAND,
      Defendant-Appellee,

GLEN W. BARNARD,
      Defendant-Counter-Claimant-Appellant,

               v.

BARRY SHALOV, CHARLES FRANK,
SCOTTSDALE INSURANCE COMPANY,
      Cross-Claim-Defendants,

            and

HILLMAN COMPANY; STEVEN N.
HUTCHINSON; H. VAUGHAN BLAXTER,
III; CAROL RILEY; FRANK A. SAVAGE;
CARL GREFENSTETTE,

      Counter-Defendants-Appellees.

No. 96-1300

---

Appeal from United States District Court
for the District of Colorado
(D.C. No. 92-Z-1191, 92-Z-9150, 94-Z-2076)

---

-2-

Submitted on the briefs:

Gerald Padmore, Theresa M. Moore, Jonathan C.S. Cox, and Vicki Marolt Buchanan, of Cox, Buchanan, Padmore & Shakarchy, Denver, Colorado, for the appellant.

Tim Atkeson, of Arnold & Porter, Denver, Colorado, and Jay Kelly Wright, of Arnold & Porter, Washington, D.C., for appellee Coopers & Lybrand.

Before EBEL, KELLY, and BRISCOE, Circuit Judges.

BRISCOE, Circuit Judge.

Glen W. Barnard, a defendant in several securities cases consolidated in the United States District Court for the District of Colorado for pretrial purposes as multidistrict litigation under 28 U.S.C. § 1407, appeals the orders entered in one of those cases assuming jurisdiction over and subsequently dismissing his cross-claims against Coopers & Lybrand. We reverse and remand.

I.

This court recently disposed of an appeal by Barnard in another of the consolidated securities cases, Hillman v. Webley, 98 F.3d 1349 (10th Cir. Sept. 30, 1996) (table), where we reviewed at length the tortuous factual and procedural history of this litigation. Because it is necessary for an understanding of the instant appeal, we must again revisit that history.

*A. Background of AHI*

Alert Holdings, Inc., (AHI) is a Delaware corporation with its principal offices in Colorado. At all times relevant to this litigation, AHI was engaged in the business of providing remote electronic monitoring of business and residential security systems throughout the United States. Barnard is a former director and president of AHI.

In the late 1980's, AHI began contacting investors about the possibility of investing in AHI equity securities and loaning funds to AHI or its affiliated entities. One proposed opportunity was for investors to purchase interests in various limited partnerships which were established to purchase alarm monitoring accounts from small, local companies and collect revenues therefrom. AHI allegedly agreed to provide alarm monitoring services for the partnership accounts in return for approximately 20% of the total account revenues of each of the limited partnerships. In addition to collecting fees for the monitoring services, AHI allegedly received account acquisition and set-up fees, as well as other fees.

To induce investors to purchase the partnership interests, AHI allegedly projected that investors would receive cash distributions of at least a 14-15% annual rate of return. AHI allegedly predicted it would eventually exercise purchase options and acquire the assets of the limited partnerships at a premium of 35% to 50% over what investors would pay for their partnership interests. Further, AHI allegedly predicted it would ultimately become a fully integrated company after exercising these purchase options, and purchasers of AHI securities would achieve even higher rates of return than purchasers of the limited partnership interests.

AHI offerings took place in 1989, 1990, and the first half of 1991. Among the many investors who took part in the offerings were a group of entities, including a company called Wilmington Securities, Inc., owned and/or controlled by Henry Hillman (hereinafter the Hillman Group). Between June 1989 and December 1990, the Hillman Group purchased thousands of shares of AHI stock and, between March 1990 and July 1991, the Hillman Group loaned millions of dollars to AHI and at least one of its related limited partnerships.

Due to their large investment in AHI, the Hillman Group sought and obtained representation on AHI's board of directors, as well as in AHI's management. Specifically, in June 1989, Steven Hutchinson, an individual associated with the Hillman Group, was appointed as a member of AHI's board. In December 1990, Frank "Terry" Savage, another individual associated with the Hillman Group, was appointed as Senior Vice President of AHI. In May 1991, Savage became President and Chief Executive Officer of AHI, replacing Barnard.

During 1990, AHI lost approximately thirty million dollars. In November 1991, AHI notified investors in the limited partnerships that scheduled third-quarter cash distributions would not be made. In December 1991 and January 1992, AHI and its related partnerships filed Chapter 11 bankruptcy petitions in the Southern District of New York.

### B. The securities lawsuits

A series of lawsuits were subsequently filed in California, Colorado, New York, and Delaware by investors with shares in AHI and/or partnership interests in AHI-related

limited partnerships. The suits alleged violations of federal and state securities laws, and named as defendants various individuals, including Barnard, who were involved in the management of AHI and/or AHI-related entities. Also named in several of the suits were Coopers & Lybrand, the accounting firm that assisted AHI in the offerings, and Otten, Johnson, Robinson, Neff & Ragonetti (Otten, Johnson), a law firm that also assisted AHI in the offerings.

According to plaintiffs in the underlying actions, AHI's statements and promises to investors were simply a cover-up for an "elaborate Ponzi scheme." In particular, plaintiffs alleged that, at the time of the offerings, AHI's basic business of monitoring alarm accounts was losing money. AHI offset those losses, plaintiffs alleged, by arranging the sale of limited partnership interests. Plaintiffs further alleged AHI's representations of potential profits, as well as its underlying assumptions and representations about the alarm monitoring business, were untrue and/or lacked any reasonable basis in fact.

The cases were eventually consolidated for pretrial purposes on April 9, 1992, pursuant to an order of the Judicial Panel on Multidistrict Litigation, in the United States District Court for the District of Colorado, under 28 U.S.C. § 1407.


C. *Resolution of AHI bankruptcy proceedings*

AHI filed its Chapter 11 bankruptcy petition on December 11, 1991. AHI filed its second amended plan of reorganization on May 6, 1993. Contained in the second amended plan of reorganization was AHI's broad release of all claims and potential claims against Wilmington. On June 24, 1993, the bankruptcy court confirmed AHI's

Chapter 11 reorganization plan, finding the AHI bankruptcy petition had been filed in good faith. By confirming the reorganization plan, the bankruptcy court also affirmed the portions of the plan in which AHI released the Hillman Group from any and all liability, thereby eliminating any and all potential derivative causes of action that could be filed against the Hillman Group for harm done to AHI.

D. *Partial settlement of consolidated class action cases*

In 1993, a settlement between the proposed class of plaintiffs (including plaintiffs from the other consolidated lawsuits) and a number of defendants was achieved in conjunction with a reorganization plan for AHI and its related entities that was eventually approved by the bankruptcy court. The settlement, valued in excess of $50 million, was funded substantially by the Hillman Group, Coopers & Lybrand, and Otten, Johnson. Barnard was not among the settling defendants.

One section of the settlement agreement is relevant for purposes of this appeal. Specifically, a section entitled "Protection of Settling Defendants against Claims over from Non-Settling Defendants and/or Third Parties" provided the class plaintiffs and the settling defendants would jointly apply to the district court for a bar order prohibiting, among other things, cross-claims made by non-settling defendants against settling defendants.

On June 9, 1993, following notice to the class and to the non-settling defendants, the district court conducted a hearing on the fairness of the proposed settlement and on issues raised in motions filed by the parties concerning the proposed bar order. On June 22, 1993, the court approved the settlement agreement. The settlement agreement, in

conjunction with the order of approval, enjoined the non-settling defendants (including Barnard) from filing contribution and/or indemnity claims, except for claims based upon a specific written agreement of indemnity. The court also approved the proportionate bar order proposed by the settling defendants. Under that bar order, all claims for contribution and/or indemnity that could be asserted by the non-settling defendants (*e.g.*, Barnard) against any of the settling defendants were "extinguished, discharged, satisfied, barred and/or otherwise unenforceable and the future filing of such claims [was] enjoined." Append. 2 at 154. Finally, in its June 23 order, the district court declared that it intended to retain continuing jurisdiction over implementation of the settlement, as well as continuing jurisdiction over the parties to the action.

On November 22, 1994, approximately seventeen months after the court approved the agreement, Barnard filed a motion to set aside the settlement agreement, arguing certain sections of the agreement were contrary to public policy and the agreement was therefore void. On August 31, 1995, the magistrate judge denied Barnard's motion to set aside the agreement, emphasizing Barnard could not rely on Fed. R. Civ. P. 60(b)(6) "to relieve [him] of [his] voluntary decision not to enter into the settlement agreement and not to appeal the settlement agreement." Append. 5 at 1296. Barnard subsequently appealed and we affirmed the magistrate's decision in Hillman.


E. *The AC case*

AC, a California limited partnership, filed suit against Barnard and his wife in California state court on February 5, 1993. AC's complaint arose out of its alleged purchase of $200,000 of AHI stock from Barnard and his wife in November 1990. The

complaint asserted claims against Barnard and his wife for fraud, negligent

misrepresentation, breach of contract, securities fraud, and rescission. On December 6,

1993, Barnard filed a first amended cross-complaint in the AC case, asserting cross-

claims against a number of cross-claim defendants, including Coopers & Lybrand and the

Hillman Group.[1]

On January 7, 1994, the Hillman Group and Coopers & Lybrand filed a joint

motion with the district court (*i.e.*, the federal district court in Colorado) asking that it

enforce the bar order it had previously issued. In their motion, the Hillman Group and

Coopers & Lybrand asserted the cross-claims filed against them by Barnard in the AC

case were in fact claims for indemnification or contribution. The motion was

subsequently joined by Frank Savage.

On March 17, 1994, the federal district court in Colorado issued an order granting

in part and denying in part the motion to enforce bar order. The court found the first two

causes of action asserted in Barnard's cross-complaint were claims for indemnification

and thus fell within the scope of the bar order. As for the remaining twelve cross-claims

(four of which involved Coopers & Lybrand), the court was unable to determine whether

they were "independent claims or disguised requests for indemnification and

contribution." Append. 2 at 184. More specifically, the court held:

> [I]t is unclear whether the third through fourteenth causes of action are
> independent claims or disguised requests for indemnification and contribution.
> Until further factual information is provided, the court is unable to determine

---

[1] According to the parties, Barnard's claims against Coopers & Lybrand were classified as "cross-claims" under California civil procedure. Although such claims are properly characterized as third-party claims under Fed. R. Civ. P. 14, we will continue to refer to them as cross-claims for purposes of clarity.

whether the substantive damage claims fall within the Bar Order.

> However, the Court will rule that, to the extent that the indemnification claims are incorporated by reference into the third through fourteenth causes of action, and to the extent that the "compensatory damages" claimed in those causes of action may include contribution or indemnification, those claims and damages are barred. Upon a later appropriate motion, the Court will review the applicability of the Bar Order to the remaining claims.

Append. 2 at 358.

On March 24, 1994, based on the district court's order, the California state court dismissed Barnard's claims for indemnification and contribution and stayed his remaining cross-claims "as to all cross-defendants until such time, if ever, as the Colorado [Federal] District Court stays its proceedings on the identical claims." Append. 2 at 502. The California state court also stayed AC's complaint for sixty days pending a ruling by the federal district court as to whether it would accept pendent jurisdiction over AC's claims.

On April 11, 1994, after the statutory period for removal had passed, Barnard filed a motion asking the federal district court in Colorado to assert jurisdiction over AC's claims. Barnard argued AC was a class member in the multidistrict litigation, that it filed a proof of claim, and that it collected monies as a result of the settlement. Barnard further argued AC's claims in the California litigation were in fact a part of the multidistrict litigation. On June 10, 1994, the magistrate judge recommended that the AC case be transferred to Colorado and consolidated with the multidistrict litigation for coordinated pretrial and discovery proceedings. The district court adopted the magistrate's recommendation on August 16, 1994, and ordered that the AC case be transferred to and consolidated with the multidistrict litigation in Colorado. On September 23, 1994, the district court ordered that the AC case "be coordinated with all other cases assigned Master Docket No. 92-Z-9150." Append. 2 at 514.

-10-

On October 18, 1994, Barnard filed a motion for clarification, stating the district court's September 23, 1994, order "could be construed to transfer the entire AC action to Master docket No. 92-Z-9150." Append. 2 at 517. However, Barnard noted that "[n]one of the non-MDL cross-claimants were notified of the [September 23, 1994] Order." Id. Accordingly, Barnard requested an order clarifying whether it had asserted jurisdiction over the cross-claims in AC. On August 31, 1995, the magistrate issued an order purporting to rule on three pending motions, including Barnard's motion to set aside the stipulation and settlement agreements and Coopers & Lybrand's motion to enforce bar order. The magistrate rejected the motion to set aside the agreements and, without discussion, granted the motion to enforce bar order. Barnard filed written objections to the magistrate's order on September 13, 1995.

Although not included in the record on appeal, AC filed a motion to dismiss its claims against Barnard and his wife, which was granted by the district court on September 15, 1995. In that order, the court ruled on Barnard's pending motion for clarification, holding that "*all* claims in *AC, et al. v. Glen Barnard, et al.*, Case No. 94927, Superior Court of the State of California for the County of San Francisco, have been transferred to this Court." Append. 3 at 675 (emphasis in original). On September 27, 1995, the district court overruled Barnard's objections to the magistrate's recommendation to grant the motion to enforce bar order.[2]

On October 30, 1995, Barnard filed a motion asking for remand of his cross-claims against Coopers & Lybrand to California state court, and asking the district court to

_____

[2] The order is confusing because it appears to refer to the magistrate's initial recommendation of March 17, 1993, rather than the magistrate's August 31, 1995, order.

clarify its September 27, 1995, order. On January 12, 1996, Coopers & Lybrand filed a motion for summary judgment on Barnard's cross-claims, arguing the cross-claims for negligent misrepresentation, negligence, and civil conspiracy were derivative claims and thus barred by the confirmed plan of reorganization entered by the bankruptcy court. Coopers & Lybrand also argued that, with respect to Barnard's claim for accountant malpractice, he had no accountant-client relationship with Coopers & Lybrand and thus had no standing to assert the claim.

On April 9, 1996, the district court issued a minute order denying Barnard's motion to remand his cross-claims against Coopers & Lybrand to California state court. On April 26, 1996, the court heard Coopers & Lybrand's motion for summary judgment. In ruling in favor of Coopers & Lybrand, the court stated:

> Well, I have no question at all about how this motion is to be decided. I wish by way of hindsight that perhaps I had been a little bit more clear in my rulings, which might have forestalled such a motion as this.
>
> There is no question that the magistrate judge, Judge Abram, who is a very experienced judge, was a state judge for many years before he was a magistrate judge, did give these matters detailed consideration. And indeed on his August 31[, 1995] order, the settlement had been worked out and was going to not be effective if these bar orders were not in effect.
>
> * * *
>
> Now, it cannot have been more clear; and if the bar order had not been in force there would have been problems with the settlement. No question about that.
>
> That came to the attention of this court not twice -- not once but twice; and Barnard did indeed object to the magistrate judge's recommendation -- actually, I put it as a recommendation and not as an order in my September 27 order. Barnard objected to the recommendation to enforce the bar order; and even though I apparently got the date of the magistrate judge's order confused, we were all talking about the same thing. It was the opportunity for Barnard to make an objection. They did make an objection, and it was overruled.

In other words, I very clearly intended that the magistrate judge's determination be given effect. And that was back in September of 1995, not last month, but more than six months ago.

* * *

I think the other issues that have been pointed out by Coopers & Lybrand here have some merit also. It appears that the magistrate judge's ruling on the summary judgment motion, even though it wasn't specifically addressed to Coopers & Lybrand, does bind them. It was -- we're talking about the August 30 order, actually a recommendation here, recommending that the motion for summary judgment--well, that it-- as far as it concerns this issue that would apply to Coopers & Lybrand, it was granted and would certainly bar Mr. Barnard's claims.

And then to top everything off, we have this question of the Mehaffy case, which it appears to the Court does apply. And claims against attorneys and doctors are limited to clients and indeed so are claims against accountants. It seems to me that even though it did not apply, that can be the only ruling or interpretation of that case.

So the Court is well satisfied for several reasons that the motion for summary judgment here must be granted.

Barnard cannot just rely on the pleadings but must come forward with some evidence to show that either he was a third-party beneficiary of Coopers & Lybrand or that there is some other basis for the accountant's alleged malpractice; and he has not done that. He can't just not present anything.

So I think that we do have as a matter of law on the merits -- have no evidence that is at all convincing that Barnard was Coopers & Lybrand's client or that he was a third party beneficiary or that there is some reason why he has a malpractice claim.

For the reasons argued by Coopers & Lybrand in this case and for the reasons I have stated and especially because this matter has really been ruled on already, the bar order had been ruled on by the magistrate judge, it's been approved by myself, it is the bar order, and it bars these claims; and if that was objectionable, that objection should have been raised a long time ago or appealed a long time ago -- or maybe it is on appeal. Counsel says some of these issues are on appeal.

At this time, then, the motion for summary judgment by Coopers & Lybrand will be granted in all respects as to all six claims, cross-claims.

Append. 3 at 1002-06.

-13-

On May 16, 1996, the district court issued an order formally granting Coopers & Lybrand's motion for summary judgment. On June 14, 1996, the court entered judgment in favor of Coopers & Lybrand on all of Barnard's cross-claims. Barnard filed his notice of appeal on June 20, 1996.

II.

Barnard contends the federal district court in Colorado erred in assuming jurisdiction over his cross-claims against Coopers & Lybrand. More specifically, Barnard contends that, because his cross-claims were filed in California state court and involved only state law claims, the district court was not authorized, under 28 U.S.C. § 1407, to transfer and/or assume jurisdiction over them. Accordingly, Barnard asserts, it was improper for the court to dismiss the claims and they should be remanded to California state court for further proceedings.

At the outset, we note it was Barnard himself who initiated the district court's assumption of jurisdiction over the AC case. On April 11, 1994, Barnard asked the district court to assert jurisdiction over the claims filed against him in AC. Putting Barnard's present arguments in the best light, Barnard apparently believed the district court would grant the motion, but would allow Barnard's cross-claims against Coopers & Lybrand to remain in California state court. On June 10, 1994, the magistrate reviewed Barnard's motion and recommended that the entire AC case be transferred to Colorado and consolidated with the multidistrict litigation for coordinated pretrial and discovery proceedings. The magistrate concluded assertion of supplemental jurisdiction over the AC case was proper because (1) there was a common nucleus of facts between the AC

-14-

case and the multidistrict litigation; (2) there was a substantial underlying federal claim, *i.e.*, the multidistrict litigation; (3) judicial economy would be best served by the action proceeding in federal district court in Colorado; and (4) the federal district court in Colorado was "in the best position to determine issues with regard to the class action settlement in general and, in particular, the application of [its] bar order to AC's claims." Append. 2 at 506.  The magistrate further noted assertion of jurisdiction over the AC case was proper "under the All Writs Act, the Anti-Injunction Act, the Supplemental Jurisdiction statute, and the Multidistrict Litigation statute." Id. at 508.  Finally, the magistrate noted he was protecting the district court's jurisdiction by recommending that the district court assert jurisdiction over the AC case.

On August 16, 1994, the district court adopted the magistrate's findings and recommendations, and ordered that the AC case be transferred to and consolidated with the multidistrict litigation in Colorado.  In support of its decision, the district court cited In re Agent Orange Product Liability Litigation, 996 F.2d 1425 (2d Cir. 1993) (holding district court, in exceptional circumstances, may use its authority under All Writs Act to remove otherwise unremovable state court case in order to effectuate and prevent frustration of orders previously issued in exercise of jurisdiction otherwise obtained), cert. denied, 510 U.S. 1140 (1994).  At the close of its order, the district court ordered "that the claims made by AC in *AC, et al. v. Glen Barnard, et al.,* Case No. 949247, Superior Court of the State of California for the County of San Francisco, are hereby transferred to *In re Alert Income Partners Securities Litigation, MDL 915*, Master Docket No. 92-Z-9150, United States District Court for the District of Colorado."  Append. 2 at 512.

Although the district court did not state specifically in its August 16, 1994, order that it was assuming jurisdiction over Barnard's third-party claims against Coopers & Lybrand, it subsequently clarified that was its intention. On September 15, 1995, pursuant to Barnard's motion for clarification, the district court held that "*all* claims in *AC, et al. v. Glen Barnard, et al.,* Case No. 94927, Superior Court of the State of California for the County of San Francisco, ha[d] been transferred." Append. 3 at 675.

The district court cited the All Writs Act in assuming jurisdiction over the AC case. The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a); see TBG v. Bendis, 36 F.3d 916, 925 (10th Cir. 1994). In United States v. New York Tel. Co., 434 U.S. 159, 172 (1977), the Supreme Court concluded the Act authorizes a federal court to "issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." This power is not limited to parties in the original action, the Court held, but rather "extends, under appropriate circumstances, to persons who . . . are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice." Id. at 174 (internal citations omitted).

In situations similar to those facing the district court, *i.e.*, where a state court action threatens to frustrate a settlement order entered by a federal court in a complex class action suit, federal courts have typically utilized the all Writs Act in one of two ways. First, some federal courts, relying on their jurisdiction over the original class action suit

-16-

and the class members, have utilized the Act to issue orders in the class action enjoining class members from pursuing state court actions that would conflict with the settlement order.[3]  See White v. National Football League, 41 F.3d 402, 409 (8th Cir. 1994) (federal district court approved settlement agreement in complex class action lawsuit and enjoined related actions pursued in other fora), cert. denied 115 S. Ct. 2569 (1995); see also In re Baldwin-United Corp., 770 F.2d 328, 335 (2d Cir. 1985) (holding All Writs Act "permits a district court to enjoin actions in state court where necessary to prevent relitigation of an existing federal judgment").  Second, some courts have utilized the Act to "remove"[4] actions from state court to federal court, and to subsequently bar litigation of the removed action.  See In re VMS Securities Litigation, 103 F.3d 1317, 1323-26 (7th Cir. 1996); Agent Orange, 996 F.2d at 1431.  Here, the district court chose the latter approach.  Accordingly, we must decide the propriety of "removing" the AC action from state court to federal court pursuant to the All Writs Act.

In Agent Orange, the Second Circuit was faced with a situation strikingly similar to that presented here.  In two class action lawsuits filed in Texas state courts, plaintiffs attempted to revive the massive Agent Orange tort litigation (Agent Orange I), which had been consolidated by the Judicial Panel on Multidistrict Litigation in the Eastern District of New York.  The Second Circuit concluded the federal district court's removal of the two Texas actions was proper pursuant to the All Writs Act because, "[i]f Agent Orange victims were allowed to maintain separate actions in state court, the deleterious effect on

---

[3]  The district court implicitly utilized this approach when it granted, in part, the joint motion to enforce bar order filed by the Hillman Group and Coopers & Lybrand.

[4]  We use the word "remove" in its generic sense since courts do not actually rely upon the federal removal statutes as a basis for assuming control over state court cases.

the Agent Orange I settlement mechanism would be substantial." 996 F.2d at 1431. In particular, the Second Circuit noted that, before a court could properly address a victim's tort claim, it would first have to decide the scope of the Agent Orange I class action and settlement. "The court best situated to make this determination," the Second Circuit concluded, "is the court that approved the settlement and entered the judgment enforcing it." Id. In conclusion, the Second Circuit held that removal under the All Writs Act of an otherwise unremovable state court action was proper because "[t]he district court was not determining simply the preclusive effect of a prior final judgment on claims or issues expected to be raised in subsequent collateral proceedings; it was enforcing an explicit, ongoing order against relitigation of matters it already had decided, and guarding the integrity of its rulings in complex multidistrict litigation over which it had retained jurisdiction." Id.; see also United States v. City of New York, 972 F.2d 464, 469 (2d Cir. 1992) (affirming removal of state law actions to federal court under All Writs Act where issues raised in state court could not be separated from relief ordered in consent decree); Yonkers Racing Corp. v. City of Yonkers, 858 F.2d 855, 864 (2d Cir. 1988) (affirming removal of non-parties' state law actions to federal court where actions might have frustrated implementation of a consent decree), cert. denied, 489 U.S. 1077 (1989).

More recently, in VMS Securities, the Seventh Circuit concluded the reasoning in Agent Orange was "sound" and held that, "in the context of complex class action litigation, a federal district court may appropriately use the All Writs Act to remove and enjoin the prosecution of subsequent state court claims in order to enforce its ongoing orders against relitigation and to guard the integrity of its prior rulings over which it had expressly retained jurisdiction." 103 F.3d at 1324.

-18-

The approach followed in VMS Securities and Agent Orange, *i.e.*, interpreting the all Writs Act as a basis for federal jurisdiction in extraordinary circumstances, is foreclosed by our decision in Commercial Sec. Bank v. Walker Bank & Trust Co., 456 F.2d 1352, 1355 (10th Cir. 1972). In Commercial Sec. Bank, we rejected a district court's purported reliance on the All Writs Act as a means for asserting jurisdiction over a party that "had not been served with process and was not in any manner before the court." In so doing, we held the Act does not allow a court to "acquire jurisdiction over an individual or property not otherwise subject to its jurisdiction," and "does not operate to confer jurisdiction." Id.[5]; see also Gullickson v. Southwest Airlines Pilots' Ass'n, 87 F.3d 1176, 1186 (10th Cir. 1996) (rejecting all Writs Act as independent basis for jurisdiction over state law claim; United States v. Hardage, 58 F.3d 569, 575 (10th Cir. 1995) (district court improperly utilized All Writs Act to compel condemnation of landowner's property).

The result then is that the district court erred in relying on the All Writs Act in assuming jurisdiction over AC. In reaching this conclusion, we acknowledge AC concerned a common nucleus of facts and raised similar claims to those previously settled in the multidistrict litigation. We also recognize the district court was simply attempting to guard the integrity of its prior rulings in the multidistrict litigation. Nonetheless, the district court ignored the clear holding of Commercial Sec. Bank when it relied on the All

---

[5] Arguably, United States v. New York Telephone Co., 434 U.S. 149 (1977) modified Commercial Sec. Bank somewhat. There is at least a suggestion in New York Telephone that the All Writs Act may be a basis for *personal jurisdiction* when subject matter jurisdiction is "otherwise obtained." New York Telephone, 434 U.S. at 172. However, here there is no independent source of subject matter jurisdiction over Barnard's state law claims against Coopers & Lybrand. Hence, even if New York Telephone is so read, it would not be sufficient to establish jurisdiction over these claims.

-19-

Writs Act as a basis for assuming jurisdiction over AC. The district court undoubtedly had the authority under the All Writs Act to enjoin parties before it from pursuing conflicting litigation in the state court, but unfortunately it did not pursue that route.

Because the district court did not have jurisdiction over AC,[6] we reverse and remand to the district court with directions to remand Barnard's remaining cross-claims against Coopers & Lybrand (*i.e.*, negligent misrepresentation, negligence, civil conspiracy, and accountant malpractice) to California state court.

III.

We REVERSE and REMAND to the district court with directions to remand to California state court.

---

[6] None of the other statutes cited by the magistrate (*i.e.*, the Anti-Injunction Act, the Supplemental Jurisdiction statute, and the Multidistrict Litigation statute) provided a basis for jurisdiction over AC. Although the AC case was initially removable based upon diversity of citizenship, the statutory time for removal expired before Barnard asked the federal district court in Colorado to assert jurisdiction over the case. See 28 U.S.C. § 1446(b). In any event, statutory removal, even if valid, would have been to federal district court in California. See 28 U.S.C. § 1441(a).

No. 96-1300, Hillman, et al. v. Webley, et al.

KELLY, Circuit Judge, concurring in result.


Although I agree with the court that Barnard's remaining cross-claims against Cooper & Lybrand should be remanded to California state court, I do so based upon the lack of explanation by the district judge and the magistrate judge as to why this federal case presents "exeptional circumstances" that would warrant taking jurisdiction over the state-law cross claims. The presumed lack of substantiality of the cross-claims cannot be a sufficient basis, nor can we assume that another tribunal will decide the cross-claims erroneously. Rather, there must be "exceptional circumstances" in which the maintenance of these state-law cross-claims concerning accountant liability would threaten the integrity of the district court's rulings in the multidistrict litigation.

I do not agree with the court that Commerical Sec. Bank v. Walker Bank & Trust Co., 456 F.2d 1352, 1355 (10th Cir. 1972), which predates United States v. New York Tel. Co., 434 U.S. 159 (1977), requires us to construe the All Writs Act, 28 U.S.C. § 1651(a), so narrowly. In my view, a district court retains authority to remove an otherwise unremovable state-court case to federal court in appropriate and narrow circumstances in aid of its jurisdiction. See In re VMS Sec. Litig., 103 F.3d 1317, 1323-26 (7th Cir. 1996); White v. National Football League, 41 F.3d 402, 409 (8th Cir. 1994) (enjoining related suits of absent class members in other fora), cert. denied, 115 S. Ct. 2569 (1995); In re Agent Orange Prod. Liab. Litig., 996 F.2d 1425, 1430-31 (2d Cir. 1993), cert. denied, 510 U.S. 1140 (1994); United States v. City of New York, 972 F.2d 464, 469 (2d Cir. 1992); Yonkers Racing Corp. v. City of Yonkers, 858 F.2d 855, 864 (2d Cir. 1988), cert. denied, 489 U.S. 1077 (1989).

Commercial Security Bank is not to the contrary when the facts of that case are considered. The district court had jurisdiction over a federal interpleader action involving shares of stock. After determining the ownership of the shares, the district judge then enjoined the government (a nonparty) from conducting a sheriff's sale of the underlying corporate assets pursuant to a state court decree. Understandably, this court rejected reliance on the All Writs Acts as a source of jurisdiction over the government because "[t]he issuance of the order by the trial court here was in no way necessary to preserve its jurisdiction." 103 F.3d at 1355. Commercial Security Bank is a considerably simpler case than those the court rejects. It did not involve even a colorable claim that the All Writs Act was invoked to prevent frustration of the district court's orders.

Whatever the merits of the court's interpretation of Commercial Security Bank, its interpetation of the All Writs Act is at odds with New York Telephone: "This Court has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained . . . ."[1] 434 U.S. at 172. "The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice . . . ." Id. at 174.

The court's reasoning deprives the district courts of an important tool for vindicating their orders in exceptional cases, thus, I do not join the opinion.

---

[1]     Plainly, the Court's use of the term "otherwise obtained" refers to the action over which the district court initially acquired jurisdiction, not an independent source of subject matter or personal jurisdiction over the removed claims or parties. See Prop. Op. at 18 n.5.