48 F.Supp.2d 699 (1998)
In re LEASE OIL ANTITRUST LITIGATION (NO. II)
Raul J. Guerra, et al., Plaintiffs,
v.
Texaco Exploration and Production, Inc., et al., Defendants.
No. MDL 1206 Civ.A. No. M-98-037.
United States District Court, S.D. Texas, Corpus Christi Division.
April 3, 1998.
*700 J.A. "Tony" Canales, Canales & Simonson, Corpus Christi, Texas, for plaintiffs.
Darrell Lee Barger, Barger, Hermansen et al, Corpus Christi, Texas, for defendants.

ORDER NO. 2
JACK, District Judge.
On this day, the Court sua sponte enters this Order of Temporary Injunction which enjoins all Defendants[1] (except for Mobil Oil Corporation)[2] and all named Plaintiffs in the above-styled multidistrict litigation[3] *701 from entering settlement agreements  either collectively or separately  which purport to settle any of the federal antitrust claims in this litigation without first notifying this Court and receiving the Court's approval of the settlement. This Order shall remain in effect until further order of this Court.

I. JURISDICTION
The Court has jurisdiction over the consolidated cases in this multidistrict litigation pursuant to the Judicial Panel on Multidistrict Litigation's transfer order of January 14, 1998, and 28 U.S.C. §§ 1331, 1332, 1367 and 1407.

II. FACTS & PROCEEDINGS
In April 1996, plaintiff royalty payees filed a class action suit in the Southern District of Texas, The McMahon Foundation et al. v. Amerada Hess Corp., et al., against 39 oil companies, alleging that the companies, in violation of § 1 of the Sherman Act, conspired for over a decade to artificially depress oil production royalty payments owed to the putative class members. In that same month, a separate group of plaintiffs brought a class action suit in state court, Cameron Parish School Board v. Texaco, Inc., against fifteen oil companies alleging violations of Louisiana law due to the underpayment of royalties owed for production of oil on properties in Louisiana. Cameron Parish was timely removed to federal court. Subsequently, three other groups of plaintiffs brought separate suits based on similar royalty underpayment allegations in federal court and based on state law violations (viz., Randolph Energy, Inc. et. al. v. Amerada Hess Corp. et. al., Stanley v. Gulf Oil Corp. et. al., Nicholson et. al. v. Marathon Oil).
In September 1996, a separate group of plaintiffs filed a putative class action in Alabama state court, E.M. Lovelace et al. v. Amerada Hess Corporation et al., based on similar royalty underpayment allegations, asserting that 24 oil company defendants violated the separate antitrust statutes of each of the fifty states. Lovelace was removed to federal court, and the plaintiffs sought a remand, arguing that federal antitrust claims were not at issue in their case since their claims were based strictly on state statutes. Notably, federal antitrust claims may only be brought in federal court. Marrese v. American Academy of Orthodpaedic Surgeons, 470 U.S. 373, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985); Freeman v. Bee Mach. Co., 319 U.S. 448, 451, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943); General Investment Co. v. Lake Shore Ry., 260 U.S. 261, 43 S.Ct. 106, 116-17, 67 L.Ed. 244 (1922).
The federal court remanded Cameron Parish since it appeared that neither diversity nor federal question jurisdiction existed. Shortly after the remand and despite their representations that the federal antitrust claims were distinct from their own state law causes of action, the Lovelace plaintiffs agreed to a global settlement agreement with Mobil Corporation which released all claims  both state and federal  of a nationwide class of royalty payees. In May 1997, Mobil and counsel for Lovelace plaintiffs announced the terms of the settlement: in exchange for the nationwide class' release of all federal and state claims based on royalty underpayments, Mobil would pay $15 million to the class (with over 40% guaranteed to the attorneys)[4], would alter its method of *702 determining royalty payments in the future, and would allow counsel for plaintiffs access to certain documents and Mobil employees. After a fairness hearing, the Alabama state court approved both a settlement class and the proposed settlement in December 1997.
Meanwhile, the Judicial Panel on Multidistrict Litigation ("JPML") was considering whether and where to consolidate the five similar federal actions which were pending and involved royalty underpayment allegations. In November 1997, counsel for plaintiffs and the defendants in McMahon (the first case brought on behalf of a nationwide class) filed a global settlement with the federal district court in Houston. Before the Houston court could consider the settlement, McMahon and the other federal cases were transferred to this Court pursuant to 28 U.S.C. § 1407 for coordinated and consolidated proceedings.

III. DISCUSSION

A. Jurisdictional Complexities and Conflicts
As the Manual for Complex Litigation, Third, ("MCL") recognizes, the "pendency of related actions in state and federal courts can cause jurisdictional complexities and conflicts." MCL, § 31.32. From the beginning, this case has been wrought with such jurisdictional conflicts because various groups of plaintiffs have brought separate actions in disparate, forums citing different legal authority while, ultimately, all groups base their claims on the same alleged wrongful conduct: the underpayment of royalties to payees by the major oil companies. While the federal cases have been consolidated in this Court, several separate actions are still being pursued in state court  most notably the Lovelace case in Alabama  and those parallel proceedings need to be harmonized with the federal multidistrict litigation in order to ensure an equitable resolution of both the state and federal claims.
At this preliminary stage, it is evident that the federal claims in McMahon are stronger than the state law claims in Lovelace which are based on the antitrust statutes of all fifty states. First, although all states have some sort of antitrust statute, their provisions frequently differ. Antitrust Law Developments, 4th Ed. Ch. IX.C at 742. Some provisions are directly comparable to §§ 1 and 2 of the Sherman Act while some compare to §§ 3 and 7 of the Clayton Act and the Robinson-Patman Act. Id. Further, "states vary widely in their exemptions with many states having exemptions pertaining to particular industries." Id. at 743. While the federal statutes provide for treble damages, some state statues do not, and some allow treble damages only when the court finds that the violation was flagrant. Id. at 743-44. Finally, the sheer complexity of managing claims under so many different statutes caselaw makes Lovelace a less feasible vehicle than McMahon for prevailing on the antitrust action since the litigation costs to plaintiffs' counsel will necessarily be much greater in Lovelace.
The very fact that the claims are quite possibly weaker in Lovelace renders the state court case prone to an inadequate, or possibly even collusive, settlement: since the plaintiffs in Alabama state court are in a relatively weak bargaining position, those plaintiffs might be motivated to accept a settlement which reflects only the value of their lesser claims, rather than the value of the exclusive federal claims. Moreover, the state court litigants might be motivated to settle the exclusive federal claims at the same time and possibly for a bargain price since the exclusive federal claims are worthless to the state court plaintiffs, except for purposes of settlement.[5] In these circumstances, the selfinterest *703 of the state court litigants themselves might drive the case towards an inadequate settlement which even the most fastidious court might feel itself bound to approve when both parties are insisting that it is a fair resolution. For this simple reason, it has been recognized that, when there are parallel federal and state cases, "[i]f the federal claims are stronger than the state claims, a global settlement in state court is not proper. The dangers of a `hijacking' of the federal claims are too high, and the state's interest is too low, to justify state court approval of a global settlement that is opposed by the federal plaintiff." Marcel Kahan and Linda Silberman, Matsushita and Beyond: The Role of State Courts in Class Actions Involving Exclusive Federal Claims, 1996 Supreme Court Rev. 219, 260-61 (1996).
As mentioned, federal law confers exclusive jurisdiction over federal antitrust claims in federal courts, and the JPML has ordered that all such claims relating to the alleged underpayments of oil royalties be consolidated in this Court pursuant to § 1407. To allow these federal claims to be "hijacked" by a global settlement in state court  where the claims could not even be adjudicated  would effectively destroy those federal rights and the federal procedures designed to safeguard them and to enable their orderly resolution.
As explained in the MCL, the Federal Rules of Civil Procedure 16, 26, 37, 42 and 83 contain "numerous grants of authority that supplement a court's inherent power to manage litigation." MCL, § 20.1; see also, Chambers v. NASCO, Inc., 501 U.S. 32, 111 S.Ct. 2123, 2132-37, 115 L.Ed.2d 27 (1991). Specifically, Rule 16(c)(12) authorizes judges to adopt "special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems" early in the litigation. Fed.R.Civ.P. 16(c)(12); MCL, § 20.1. In light of this mandate to adopt special procedures to better manage complex litigation, the Court, acting pursuant to the All Writs Act, will enter a preliminary order designed to avoid the conflicts that will inevitably arise if parties in a parallel state action prematurely enter into a settlement agreement which purports to release the exclusive federal antitrust claims which are now before this Court.

B. Federal Courts' Authority to Enjoin Parties Before It
The All Writs Act, 28 U.S.C. § 1651(a), confers "extraordinary powers" upon federal courts, ITT Community Dev. Corp. v. Barton, 569 F.2d 1351 (5th Cir. 1978):
The Supreme Court and all courts established by this Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
28 U.S.C. § 1651(a). With respect to this Act, the Supreme Court has emphasized that "`a federal court may avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it.'" United States v. New York Tel. Co. 434 U.S. 159, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 238, 87 L.Ed. 268 (1942)).
While these powers are extraordinary, they are also "firmly circumscribed." ITT Community, 569 F.2d at 1358. The Fifth Circuit has instructed that the scope of a federal court's power under the All Writs Act "depend[s] on the nature of the case before the court and the legitimacy of the ends sought to be achieved through the exercise of the power." *704 Id. at 1358-59. A court may not rely on the Act to enjoin conduct that is "not shown to be detrimental to the court's jurisdiction," but rather any order under the Act must be "directed at conduct which, left unchecked, would have had the practical effect of diminishing the court's power to bring the litigation to its natural conclusion." Id. at 1359.
Even though powers under the Act are in general narrowly circumscribed, the Act frequently enables a court to issue preliminary orders which will quell a threat to the proper exercise of its jurisdiction. For example, the Supreme Court has recognized that, even when jurisdiction only potentially exists, the Act grants courts the power to "issue status quo [injunctive] orders to ensure that once its jurisdiction is shown to exist, the court will be in a position to exercise it." ITT Community, 569 F.2d at 1359, n. 19 (citing FTC v. Dean Foods Co., 384 U.S. 597, 86 S.Ct. 1738, 1742-43, 16 L.Ed.2d 802 (1966)). Similarly, when the Act authorizes protective action, a court may enjoin not only parties to the action, but nonparties as well. In those circumstances, the Supreme Court has stated that "[t]he power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice". New York Telephone, 98 S.Ct. at 373.
Here, the Court clearly exercises jurisdiction over the claims and the parties, and simply must take preliminary action to protect its jurisdiction over the exclusively federal antitrust claims: the Court needs to act in order to prevent the parties before it from possibly pursuing an inadequate or collusive settlement in state courts which would release the apparently stronger claims in the instant case. In sum, both the "nature of the case" and the "legitimacy of the ends" warrant action by this Court under the Act. ITT Community 569 F.2d at 1358-59. The MDL case features exclusive federal claims which entitle a prevailing plaintiff to treble damages. 15 U.S.C. § 15(a). The antitrust allegations raise complex legal issues and will entail extensive discovery, and the resolution of the case will impact the rights of thousands of royalty owners across the nation and could have a significant financial impact on the entire oil industry. If an effort by the defendants to reach an inadequate or collusive settlement in state courts is "left unchecked," then this court will be absolutely prevented from "bring[ing] the litigation to its natural conclusion." ITT Community, 569 F.2d at 1359. For these reasons, the All Writs Act authorizes this Court to enter an injunctive order against the parties in order to preserve its jurisdiction over this MDL litigation.

C. Appropriate Action Pursuant to All Writs Act
As shown below, two circuit courts have indicated that, pursuant to the All Writs Act, the Court may enjoin all defendants and all named plaintiffs in this MDL case from entering into a settlement agreement releasing the federal claims without first notifying this Court and receiving the Court's approval.
In In re General Motors Corporation Pick-Up Truck Fuel Tank Products Liability Litigation, 134 F.3d 133 (3rd Cir. 1998), class representative plaintiffs across the country brought class action suits against General Motors alleging a design defect in pick-up trucks. All federal cases were consolidated in one federal district court while several cases remained pending in state court. Because the Anti-Injunction Act, 28 U.S.C. § 2283, would not allow the district court to enjoin the state court itself in the circumstances, the court refused to enjoin the parallel state court proceedings when the plaintiffs warned that a state court settlement was imminent *705 which would release the claims in federal court. The Third Circuit affirmed the district court's refusal to enjoin the state court. However, in doing so, the Third Circuit also indicated thatnotwithstanding the limitations of the Anti-Injunction Act  the district court could have entered an injunction against the parties over whom it had personal jurisdiction, even before the federal court had entered an order which required protection from the potential interference of a state court settlement. The Third Circuit stated: "... it is conceivable that we could direct the district court to enjoin those 200 plaintiffs [over whom the district court had personal jurisdiction] from pursuing their state damage remedies in Louisiana [state court]." In re General Motors, 134 F.3d at 141 n. 2.
The Third Circuit decided not to enjoin the plaintiffs from pursuing claims in state court because that relief had not been requested and also because it would have been futile. Nevertheless, the Third Circuit's dicta is significant for two reasons: (1) it confirms that, where jurisdiction over federal MDL class action litigation[6] is threatened by a potential settlement of the same claims in a state court, the federal court can act pursuant to the All Writs Act even when the federal court has not already entered an order that requires preservation; see also In re Baldwin-United Corp., 770 F.2d 328, 335 (2d Cir.1985) (The All Writs Act empowers a federal court to issue an injunction against actions in state court "even before a federal judgment is reached..."); and, (2) it indicates that, even in circumstances where the federal court cannot enjoin the state court proceedings, the federal court nevertheless can enjoin the parties over whom it has personal jurisdiction.
The Third Circuit does not discuss whether the court's power to enjoin parties in these circumstances extends equally to plaintiffs and defendants over whom it has personal jurisdiction. Instead of explicitly discussing this point, the Third Circuit simply confirms the propriety of enjoining plaintiffs, but its rationale for exercising injunctive power over the representative plaintiffs applies equally well to defendants. The Third Circuit reasoned that, since the district court had personal jurisdiction over the 200 named plaintiffs in the federal suit, it had the power to enjoin them. A district court exercises personal jurisdiction over defendants, just as surely as it exercises jurisdiction over the representative plaintiffs in a class action suit, and therefore it presumably has the same power to control their actions which impact upon the litigation in federal court. Thus, it can be assumed that the Third Circuit's approval of injunctions against named plaintiffs in these circumstances applies equally to defendants in the same circumstances.
In fact, the Tenth Circuit appears to have subsequently made this assumption that both parties before the court are treated the same in such circumstances  that is, both the plaintiffs and defendants may be enjoined from undermining the claims before the federal court. In Hillman v. Webley, 115 F.3d 1461 (10th Cir. 1997), the Tenth Circuit held that the federal district court overstepped the bounds of the All Writs Act when it depended on the Act as an independent source of jurisdiction to remove otherwise unremovable state law claims from a parallel state action and to consolidate them with its own MDL litigation.[7] Nevertheless, the court stated that, even if the district court could not remove the disruptive state claims, the *706 district court "undoubtedly had the authority under the All Writs Act to enjoin parties before it from pursuing conflicting litigation in the state court, but unfortunately it did not pursue that route." Hillman, 115 F.3d at 1469. In Hillman, the district court had already approved a partial settlement agreement that needed protection, but that fact does not alter the significance of the Tenth Circuit's statement: given that the court had a justified purpose for invoking the All Writs Act, the court's power over the parties extended equally to the defendants and the plaintiffs, such that the court could enjoin both parties from pursuing "conflicting litigation."
One commentator has succinctly described the scope of a federal court's powers under the All Writs Act when it has jurisdiction over parties in a federal case and when parallel state court cases threaten to undermine the federal claims: "Although courts ... normally lack the power to enjoin absent class members (or their attorneys) from bringing suit in another forum, they do have power over the parties before them. This includes the power to enjoin the defendant from entering into a settlement class action with another plaintiff in another forum, at least without notice to the court and its approval." John C. Coffee, Jr., Class Actions: Interjurisdictional Warfare, N.Y.Law J. 5 (1997). Such preventive action is precisely what is needed in the instant MDL litigation.

D. Personal Jurisdiction over the Defendants
The JPML has already consolidated six federal cases in this MDL litigation, and it is likely that more tag-along cases will be added in the future. The Court emphasizes that it enters the following Order which is recited below in Section IV  against all Defendants in all actions consolidated into MDL 1206 over whom the court has jurisdiction.
Further, the Court FINDS that it has jurisdiction over all Defendants named in Randolph Energy, Inc. v. Amerada Hess Corp., et al., C-98-041, McMahon Foundation, et al., v. Amerada Hess Corp., et al, C-98-048, Stanley, et al., v. Gulf Oil Corporation, et al., C-98-068, Nicholson, et al. v. Marathon Oil Company, et al., C-98-110, Cameron Parish School Board, et al. v. Texaco, Inc., et al., C-98-111, and McMahon Foundation et. al. v. Occidental Corporation et. al. because either (1) the defendants have filed an answer in one of these cases; or, (2) the defendants have failed to file an answer within the time allowed by Federal Rules of Civil Procedure 12(a). Moreover, many of defendants have urged the transferor court in Houston to approve their global settlement of these claims.
The second category of defendants bears some explanation because of the twisted path of the litigation in McMahon. In that case, the plaintiffs filed their original complaint in April 1996, and, in May, the majority of the defendants filed Rule 12(b)(6) motions to dismiss, essentially arguing that the complaint was too vague to state a claim. In March 1997, the magistrate judge recommended that the plaintiffs be required to file a more definite statement, and, in October 1997, the court adopted the magistrate's recommendation. On October 30, 1997, the plaintiffs filed their first amended complaint which was over 70 pages and included attachments which served as substantial support for their allegations.
The defendants then had ten days to respond to the first amended complaint. Fed.R.Civ.P. 12(a)(4)(B) ("if the court grants a motion for a more definite statement, the responsive pleading shall be served within 10 days after the service of the more definite statement"); Mason v. Lister, 562 F.2d 343, 345 (5th Cir.1977). On November 7, instead of responding, the parties stipulated that the defendants did not have to respond until December 10, 1997, and the Houston court approved the extension. On December 3, the parties stipulated to extend the deadline another month, and the Houston court did not rule *707 the unopposed extension. Similarly, the parties entered stipulations to extend this response deadline on January 6, January 21, and February 6. Most recently, the parties filed a stipulation on March 6 to extend the response deadline to April 10. Except for the stipulation of November 1997, none of these stipulations have been approved by the transferor court in Houston or by this Court.
Under Federal Rules of Civil Procedure 6(b), "the parties may not agree to an extension of time without court approval." In re Sonoma V, 703 F.2d 429, 431 (9th Cir.1983); Orange Theatre Corp. v. Rayherstz Amusement Corp., 130 F.2d 185, 187 (3d Cir.1942) (en banc); U.S. v. Martin, 395 F.Supp. 954, 960 (D.C.N.Y.1975); Caraballo v. Lykes Bros. S.S. Co., 212 F.Supp. 216, 220 (D.C.Pa.1962) ("Stipulations made without approval of court, purporting to extend the time for pleading, are ineffective"); 4A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1165, at 488 ("... a stipulation by the parties for an extension of time is ineffective if it is not also embodied in an order of the court"). Where a defendant fails to respond within the time required by Rule 12(a), it is within the district court's discretion to enter a default judgment against the defendant. Mason, 562 F.2d at 345. All of the defendants in McMahon have been involved in this litigation since May 1996, and the defendants which have not filed answers to the first amended complaint of October 1997, have clearly failed to meet the response deadline set by Rule 12(a)(4)(B). As explained, their attempts to stipulate an extension of the Rule 12(a) response deadline are ineffective unless approved by the court, and, except for the first one, their stipulations were not approved. Accordingly, due to these defendants' failure to respond, the Court has the power to enter a default judgment against them. It follows, a fortiori, that the Court has the lesser power of simply entering an injunctive order against them pursuant to the All Writs Act.[8]
Moreover, the fact that the Court exercises such jurisdiction over the McMahon defendants must have been anticipated by those defendants since the Court has notified them that the Court disregards their filings which stipulate to an extension of deadlines. The Court's Order of March 19, 1998, explicitly instructed the parties that: "Any attempt by the parties to modify the response times, answer times, etc. unless approved by this Court shall be disregarded." (Order at 4-5.). Thus, the defendants have had more than ten days' notice that the Court considered their stipulations ineffective, and the defendants have failed to file a response or answer within the ten day limit of Rule 12(a)(4)(B).
Accordingly, the Court FINDS that it exercises the requisite jurisdiction to enter an injunctive order against all defendants in this MDL litigation.

IV. INJUNCTIVE ORDER
The Court FINDS that it is necessary to enter the following injunction in aid of its jurisdiction. Accordingly, pursuant to the All Writs Act, 28 U.S.C. § 1651(a), the Court ENJOINS all named Plaintiffs and all Defendants in the above-styled MDL litigation (except for Mobil Oil Corporation)[9] from entering  collectively or separately  into any settlement agreement which releases or purports to release the federal antitrust claims brought in this litigation, without first notifying this Court of the settlement agreement and without first obtaining the Court's approval of said agreement. This Order is a temporary injunction but will remain in effect until further order of the Court.
NOTES
[1] "All Defendants" includes all Defendants already in MDL 1206 (Amerada Hess Corp., Amoco Oil Corp., Amoco Production Company, Apache Corporation of Delaware, Atlantic Richfield, Company, BP Oil Inc., BP Exploration and Oil Inc., Burlington Oil & Gas Company, Chevron USA Inc., Citgo Petroleum Corp., Coastal Corp., Coastal States Trading Inc., Conoco Inc., Diamond Shamrock Refining Company L.P., Enron Corp., Enron Oil & Gas Company, EOTT Energy Operating Limited Partnership, EOTT Energy Corp., Exxon Corp., Fina Oil & Chemical Company, Gulf Oil Corp., Hunt Oil Company, Kerr-McGee Corp., Kerr-McGee Refining Corp., Koch Industries Inc., Koch Oil Company, Louisiana Land & Exploration Company, Marathon Oil Company, Mobil Oil Exploration and Producing Southeast Inc., Occidental Petroleum, Ohio Oil Company f/k/a Marathon, Oryx Energy Company, Oxy USA Inc., Palmer Petroleum Inc., Pennzoil Company, Phibro Inc., Phibro Energy USA Inc. a/k/a Basis Petroleum Inc., Phillips Petroleum Company, Pride Oil Company Inc., Pride Companies L.P., Pride Refining Inc., Scurlock Permian Corp., Shell Oil Company, Shell Oil Products Company, Shell Western Eastern & Pacific Inc., Sun Company Inc. (R & M) f/k/a Sun Refining & Marketing Company, Texaco Inc., Texaco Exploration and Production Inc., Texaco Trading and Transportation Inc., Unocal Corp., Union Oil Company of California, Union Pacific Resources Company) and all other Defendants in Guerra et. al. v. Texaco Exploration and Production Inc. et al., M-98-37 (Texaco Pipeline Inc., Four Star Oil & Gas Company).
[2] Mobil Oil Company will be excluded from this Order pending the Court's resolution of Mobil's motions requesting that the Court give full faith and credit to the global settlement agreement which Mobil entered into in Alabama state court. See infra at pp. 701-702.
[3] This includes all of the named Plaintiffs in the following cases which presently compose MDL-1206: Randolph Energy, Inc. v. Amerada Hess Corp., et al., C-98-041, McMahon Foundation, et al., v. Amerada Hess Corp., et al, C-98-048, Stanley, et al., v. Gulf Oil Corporation, et al., C-98-068, Nicholson, et al. v. Marathon Oil Company, et al., C-98-110, and Cameron Parish School Board, et al. v. Texaco, Inc., et al., C-98-111, and MacMahon Foundation et. al. v. Occidental Petroleum et al., C-98-130. This also includes the named Plaintiffs in Guerra et. al. v. Texaco Exploration and Production Inc. et al., M-98-37, which has already been transferred to this Court and which the Court intends to consolidate with MDL-1206.
[4] In comparison, Texaco has settled similar claims with the state of Louisiana for $400 million and with New Mexico for $4.1 million.
[5] The Supreme Court, in Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 116 S.Ct. 873, 877-78, 134 L.Ed.2d 6 (1996) held that, "a judgement entered in a class action, like any other judgment entered in a state judicial proceeding, is presumptively entitled to full faith and credit under the express terms of the [Full Faith and Credit] Act" and that class action settlements reached in state court could extinguish claims exclusively within the jurisdiction of federal courts.
[6] Notably, in In re General Motors, the federal cases did not even involve claims of exclusive federal jurisdiction, but rather ordinary tort claims or federal consumer protection statutes.
[7] Other circuits have approved of this use of the All Writs Act. See e.g., In re Agent Orange Product Liability Litigation, 996 F.2d 1425 (2d Cir.1993); In re VMS Securities Litigation, 103 F.3d 1317 (7th Cir.1996).
[8] As mentioned above, a federal court even has the power to enjoin non-parties under the All Writs Act in certain circumstances.
[9] For the Court's explicit listing of the parties, see supra notes 1 through 3.