**Richard NIXON, Robert Camm, and Quadra Graphics, Inc., Plaintiffs,**

v.

**Warren JAMES, Warren James & Associates, and American General Life Insurance Co., Defendants.**

**No. 3:01–1352.**

United States District Court, M.D. Tennessee, Nashville Division.

Dec. 4, 2001.

Robert E.J. Curran, Curran & Byrne, P.C., Media, PA, for plaintiffs.

Robert E. Cooper, Jr., Anna M. Grizzle, Bass, Berry & Sims, Nashville, TN, Stephen C. Baker, Drinker, Biddle & Reath, Philadelphia, PA, for defendants.

### MEMORANDUM ORDER

JOHN T. NIXON, Senior District Judge.

Pending before this Court is Defendants' Motion of Removal (Doc. No. 1) and Plaintiffs' Motion to Remand this case to the Court of Common Pleas, Philadelphia County. (Doc. No. 9). Defendant American General responded by filing a Brief in Opposition to the Motion to Remand (Doc. No. 11), and Plaintiffs filed a Sur Reply Memorandum (Doc. No. 13). For the reasons stated below, the case is remanded to the Pennsylvania Court of Common Pleas, Philadelphia County.

### I. Background

This case arises out of allegations of the purported misappropriation of insurance premium payments by the Plaintiffs' life insurance agent. Plaintiffs Richard Nixon ("Nixon") and Robert Camm ("Camm") are the owners of six life insurance policies issued by American General Life Insurance Company ("American General") between 1982 and 1986.[1] (Pl.Complaint, ¶ 11). The policies were purchased by Nixon and Camm's employer, Quadra Graphics, Inc. ("Quadra") from Warren James and Warren James and Associates (collectively, "James"). (Id., at ¶ 10–11).

Plaintiffs allege that, beginning in May of 1988, James implemented a scheme to defraud the Plaintiffs by changing Plaintiffs' addresses on American General documents and records to James' own address and directing Plaintiffs to make all premium payments directly to James. (Id., at ¶ 20). All American General communication came to Plaintiffs through James, and Quadra forwarded all premium payments to James. James was to forward the premium payments to American General. Plaintiffs allege that over the course of twelve years, James forwarded to American General the minimum amount necessary to keep the policies in force, and kept the difference. (Doc. No. 9, Pl. Motion to Remand, at p. 2).

On August 24, 2001, Plaintiffs filed suit against Warren James, Warren James and Associates and American General in the Pennsylvania Court of Common Pleas, Philadelphia County. In their Complaint, Plaintiffs allege that James committed fraud by making false representations aimed at inducing Plaintiffs to advance funds directly to James, rather than American General. (Pl. Complaint, at ¶ 42–50). Plaintiffs also allege that James' purported fraud is attributable to American General, who are responsible for the actions of their agent, made within the scope of James'

---

**1.** The policies were actually issued by Republic National Life Insurance Company, which has since been acquired by American General.

agency and in furtherance of the business of American General. (*Id.*, at ¶ 49). Plaintiffs also base their complaint against American General on various other grounds: breach of contract, negligence, respondeat superior, unfair trade practices and consumer protection law. (*Id.*).

On September 2, 2001, American General filed a Notice of Removal to this Court, arguing that this case was governed by a settlement filed in a class action lawsuit filed in this Court, *Harry J. Manners et al. v. Am. Gen. Life Ins. Co.*, No. 3–98–0266 (M.D.Tenn.1998)(herein, "*Manners*"). Defendants contend that the *Manners* settlement precludes Plaintiffs from pursuing this action in a Pennsylvania state court.

Plaintiffs contend that this case is distinct from the *Manners* litigation and request that the action be remanded to the Pennsylvania court for a number of procedural and substantive reasons. First, Plaintiffs claim that because Defendants American General did not obtain James' consent, their Notice of Removal is invalid. Plaintiffs aver that a Notice of Removal requires unanimity among the Defendants. Second, Plaintiffs claim that an action may only be removed to a district court within the state in which the original action is pending. In this case, the action was removed from a Pennsylvania state court to a Tennessee federal court. Third, Plaintiffs claim that this case is distinct from the *Manners* litigation, as it implicates the alleged theft of premiums by an agent, an issue not addressed in the class action settlement. In addition, Plaintiffs claim that due to James' purported fraud, they had no notice of the *Manners* class action, and thus, even assuming that this action was covered by the *Manners* umbrella, it would be inequitable to bind Plaintiffs by a settlement in a class action that they were unaware of. Therefore, Plaintiffs argue that the case should be remanded back to the Pennsylvania Court of Common Pleas in Philadelphia. (Doc. No. 9).

Thus, the issue that must be determined by this Court is whether this action falls under the *Manners* class action, and if so, whether the Court should nevertheless remand it to the Pennsylvania court.

## II. Legal Standards

A party seeking to remove an action to federal court may do so pursuant to 28 U.S.C. § 1446(a) by filing a Notice of Removal in the federal court. Title 28 U.S.C. § 1446(a) requires that:

A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal . . .

The removal jurisdiction of the federal courts is to be "scrupulously confined," *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109, 61 S.Ct. 868, 85 L.Ed. 1214 (1941), and "[i]f federal [removal] jurisdiction is doubtful, a remand is necessary." *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir.1994). The burden of showing that the requirements for removal have been met falls on the party seeking to remove the action, rather than the party seeking a remand. *Jerome–Duncan v. Auto–By–Tel, L.L.C.*, 176 F.3d 904 (6th Cir.1999). The strict policy against removal and for remand protects the sovereignty of state governments and state judicial power. *Shamrock*, 313 U.S. at 108–09, 61 S.Ct. 868.

As clearly indicated by 28 U.S.C. § 1446(a), a party may only remove an action to a federal court within the same state as the state action is pending. *See* 28 U.S.C. § 1441(a)(2001). *See also Addison v. North Carolina Dept. of Crime and*

*Public Safety,* 851 F.Supp. 214 (M.D.N.C., 1994)(holding that removal of action from state court to federal district court was in error, where federal district did not include place where state action was pending, and remanding action to state court).

 Because removal is a statutory right, the Defendants must comply strictly with the procedures to effect removal. As a general rule, all defendants must join in the removal petition. *Lewis v. Rego Co.,* 757 F.2d 66, 68 (3d Cir.1985). Unanimity among the defendants must be expressed to the court "within thirty days after the receipt by the defendant ... of the copy of the initial pleading" containing the removable claim. 28 U.S.C. § 1446(b) (2001). There are three well-recognized exceptions to the rule that all defendants must join in the removal petition: (1) where a defendant was not yet served with process at the time the removal petition was filed; (2) where a defendant is merely a nominal or formal party-defendant; or (3) where the removed claim is a separate and independent claim under 28 U.S.C. § 1441(c). *Moody v. Commercial Ins. Co.,* 753 F.Supp. 198, 200 (N.D.Tex.1990).

 Notwithstanding the requirements of 28 U.S.C. §§ 1441 and 1446, a federal court may issue "all writs necessary in aid of their respective jurisdiction and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a)("All Writs Act"). The Supreme Court has held that a district court may utilize the All Writs Act in exceptional circumstances to "effectuate and prevent the frustration of an order it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. New York Telephone Co.,* 434 U.S. 159, 172, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977). Exceptional circumstances include a situation where a state court suit constitutes a threat to the integrity of a federal court's previous order. *Bylinski v. City of*

*Allen Park,* 169 F.3d 1001, 1003 (6th Cir. 1999); *In re Agent Orange Prod. Liab. Litig.,* 996 F.2d 1425, 1431 (2d Cir.1993) (Act grants courts "authority to remove an otherwise unremovable state court case in order to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained."). A few courts have held that a case filed in state court that comes within a federal court's ancillary jurisdiction may be removed by utilizing the All Writs Act. *See e.g., In re VMS Sec. Litig.,* 103 F.3d 1317 (7th Cir.1996). Where a class action settlement purports to resolve a certain issue in a federal court, a suit in a state court may constitute "a breach of the agreement [that] would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 380, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

The All Writs Act is an extraordinary remedy that has only been utilized by the federal courts as an independent basis of jurisdiction since 1988. *Yonkers Racing Corp. v. City of Yonkers,* 858 F.2d 855 (2d Cir.1988). Although the All Writs Act dates back to the Judiciary Act of 1789, for nearly two hundred years no court relied on § 1651(a) as a basis for exercising its jurisdiction over a case removed from state to federal court. *See generally,* Lonny Sheinkopf Hoffman, *Removal Jurisdiction and the All Writs Act,* 148 U. Pa. L.Rev. 401 (1999). Since 1988, however, a number of federal circuits have embraced the limited use of the All Writs Act as an exceptional means to attain jurisdiction. *See e.g., Xiong v. Minnesota,* 195 F.3d 424 (8th Cir.1999); *Bylinski v. City of Allen Park,* 169 F.3d 1001 (6th Cir.1999). Only the Tenth Circuit has held that the All Writs Act is not capable of supporting removal under any circumstances. *Hill-*

*man v. Webley*, 115 F.3d 1461 (10th Cir. 1997).

■ However, as an extraordinary remedy, the All Writs Act is not constrained by the limitations inherent in other Judicial Code provisions governing removal. *See, e.g.* 28 U.S.C. §§ 1441, 1446, 1447. In other words, removal under the All Writs Act is not akin to removal under 28 U.S.C. § 1441, which is limited by formal requirements, as discussed above. The All Writs Act contemplates the paramount protection of a federal court's jurisdiction, and it would subvert the "All Writs" part of the Act for a Court to limit its reach when it conflicts with the Judicial Code. Indeed, the All Writs Act becomes necessary precisely when other provisions of the Judicial Code create a roadblock to the federal court's jurisdiction. Hence, this Court holds, apparently as a matter of first impression, that the All Writs Act is not constrained by the removal provisions contained in 28 U.S.C. § 1441, § 1446, § 1447 of the Judicial Code.

■ This Court recently utilized the All Writs Act in removing a state court action to this Court in a case implicating another federal class action settlement. *Marshall v. Am. Gen. Life Ins. Co.*, 174 F.Supp.2d 709 (M.D.Tenn.2001). However, this Court recognized that the All Writs Act is a limited and exceptional remedy, and limited its holding to the exceptional facts before the Court—specifically, the allegations of fraud on the Court. *Id.*, at 715–16. The All Writs Act is not a "jurisdictional blank check," *In Re Agent Orange*, 996 F.2d at 1431, and is only utilized when circumstances necessitate this unorthodox means of attaining jurisdiction. This Court will rely on the All Writs Act only in the rare cases that both involve this Court's retained jurisdiction, and demand federal jurisdiction in order to maintain the integrity of this Court's previous orders.

### III. Discussion

Defendants contend that this case is governed by the *Manners* class action settlement, and must be removed from the Philadelphia Court of Common Pleas to this Court. Plaintiffs claim that this case is factually distinct from the class action settlement, and that, even if Plaintiffs' claims were covered by the *Manners* umbrella, their insurance agent's fraud prevented them from properly opting out of that class action settlement. This Court must determine whether the present case is analogous to the *Manners* class action, and, if so, whether the Court has the power to retain jurisdiction over the state case.

#### 1. *Manners*

■ The *Manners* class action involved claims against American General for, among other things, failing to adequately supervise its agents and the failure of certain policies to accrue agreed-upon cash values. (Stipulation of Settlement, December 16, 1998). This Court's Order approving the Class Action Settlement, recognized that the class consists of "all persons or entities who had, at any time from January 1, 1982 through December 31, 1997, an ownership interest in one or more life insurance policies designed to produce cash and surrender values, where such values depend on certain non-guaranteed elements. . . ." (*Manners* Order Approving Class Action Settlement, Doc. No. 169 (herein, "Manners Order")). The complaint giving rise to the Settlement itself was premised on American General's (and its predecessors') "sales practices and the sale and characteristics of the Company's products." (*Manners* Settlement, December 16, 2001, (herein, "*Manners* Settlement.")).

Pursuant to the *Manners* Order, this Court released American General from all claims concerning the "relationship between a policy or policy's cash surrender value and the cumulative amount of premiums paid, and claims related to the manner in which American General trained and/ or supervised its agents." *Manners* Order at ¶¶ 13(II)(A)(2)(h) and (r). In order to prevent Class Members from filing elsewhere, the Court entered a permanent injunction that prevents them from filing claims based on issues resolved by the *Manners* Settlement. *Id.*, at ¶ 14. Additionally, the Court retained jurisdiction "as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement." *Id.*, at ¶ 20.

### 2. The Pennsylvania Action Does Not Implicate the Manners Settlement

Defendants correctly state that "[t]he Manners Class Action forms the critical backdrop against which the appropriateness of American General's removal is to be judged." (Doc. No. 11, at p. 3). While Plaintiffs claim that this action is distinct from the *Manners* Settlement, Defendants maintain that Plaintiffs' claims pertain to the same factual and legal claims that were addressed in the *Manners* litigation.

The Court finds that Plaintiffs' claims do not implicate the *Manners* Settlement, and thus the Court deems it proper to remand this case to the Pennsylvania Court of Common Pleas in Philadelphia. Although this case involves American General's life insurance policies, that is the only similarity between this case and *Manners*. The present case involves claims of fraud

against James for misappropriating payments under six life American General life insurance policies. Plaintiffs also claim that American General failed to adequately supervise James, its insurance agent. Quadra, Nixon and Camm do not seek to make a claim based on the nature of the American General life insurance policies. To the contrary, they claim that, due to James' fraud, they did not receive the benefits of the life insurance contracts they bargained for. American General is implicated by Plaintiffs' suit because the factual allegations involve American General's agent. In fact, American General admits that James was an agent authorized to place business on their behalf. (Doc. No. 8, ¶ 5).

However, not every case involving American General insurance policies falls within the *Manners* Settlement. Here, the facts alleged by the Plaintiffs do not involve a claim based on the nature of the American General policy, as in *Manners*. Although Plaintiffs do allege that American General failed to provide policies that accrued "cash values at the rates agreed upon by the parties," and that American General failed to "monitor the acts of its agents," (Pl. Compl. at ¶¶ 40, 52), those claims are based on the underlying fraud of American General's agent, rather than any inherent deficiency of the insurance policies. Plaintiffs' claims are also not premised on American General's failure to train its agents. Therefore, although this case ultimately resembles issues implicated by *Manners*, the underlying claim is distinct from the inherent deficiencies in the American General insurance policies that lead to the *Manners* Settlement.[2] In

---

**2.** Plaintiff contends that even if this Court finds that Plaintiffs were *Manners* class members, it would be unfair to bind them by that settlement because they were unable to opt out, given the fact that James allegedly changed the addresses on their policies.

(Doc. No. 9, at p. 7–8). Although the Court agrees that it might be inequitable to bind a party that did not have true opportunity to opt out of a class action settlement, the Court need not address this issue at this time.

this case, the underlying issue is whether American General's agent fraudulently tampered with the insurance contracts and kept the proceeds of the policies for himself. Although both *Manners* and this case involve insurance contracts, Plaintiffs' claims in this case are factually distinct from the claims of the Class Members in *Manners*.[3] Thus, this case should be remanded to the Pennsylvania Court of Common Pleas in Philadelphia, so that it may address the unique legal and factual issues implicated by Plaintiffs' complaint.

*3. The Court Need Not Fully Address the Alleged Deficiencies in Removal Procedure or the All Writs Act*

Because this Court remands the case to the Pennsylvania State Court on substantive grounds, it is not necessary to fully address Plaintiffs' procedural objections to removal: (1) that the action may only be removed to a federal court in Pennsylvania, and (2) that the action may not be removed because one of the Defendants has failed to give its assent to the removal.[4] Defendants do not claim that these arguments are without merit, and the Court finds that there is no basis, under the removal statutes, for this case to be before this Court.

Nevertheless, Defendants claim that this Court may remove the case pursuant to the All Writs Act. However, the Court finds that Defendants' Notice of Removal is substantively deficient because this case does not implicate the *Manners* settlement. Therefore, the Court will not address Defendants' argument that the All Writs Act is the appropriate vehicle for removing Plaintiffs' action to this Court. The Court emphasizes again that the All Writs Act is an exceptional procedural device, and will be invoked sparingly, as in *Marshall*. This case does not present the same exceptional circumstances that were implicated by *Marshall*.

Defendants have simply failed to meet their burden of showing that the requirements for removal have been met. The Court also declines to base its jurisdiction on the All Writs Act. Therefore, the Court finds that Plaintiffs' action does not belong in a Tennessee federal court, but must be remanded back to the Pennsylvania Court of Common Pleas in Philadelphia.

## IV. Conclusion

For the reasons discussed above, the Court hereby GRANTS Plaintiffs' Motion to Remand this matter to the Pennsylvania Court of Common Pleas, Philadelphia County. Accordingly, this matter shall be REMANDED to that court.

It is so ORDERED.

---

3. As Plaintiffs point out, whether or not they could have been members of the *Manners* class is not relevant because this case does not implicate the *Manners* settlement.

4. The Court has been informed that due to the October 9, 2001 Bankruptcy of Warren James and Associates, the proceedings against Warren James and Warren James & Associates have been stayed by Order of Magistrate Judge Griffin. Because it is not necessary to the resolution of this case, the Court will not address the effect of that bankruptcy on American General's need to receive James' assent to the removal of this case.