**TUNE, ENTREKIN & WHITE, P.C., Escrow Agent,**

v.

**Emily A. MAGID, Elise S. Small, and Shelby Land, LLC (Landowners), and PSC Metals, Inc. (Tenant).**

No. 3:02–0288.

United States District Court, M.D. Tennessee, Nashville Division.

Sept. 9, 2002.

Thomas V. White, Tune, Entrekin & White, Nashville, TN, for plaintiff.

Dudley Mack West, White & Reasor, William L. Harbison, Sherrard & Roe, Nancy S. Jones, Mark W. Peters, Waller, Lansden, Dortch & Davis, Nashville, TN, for defendants.

## MEMORANDUM

WISEMAN, Senior District Judge.

### I. Facts

This case is an interpleader action filed by the law firm of Tune, Entrekin & White, P.C. ("Tune, Entrekin & White") against the landowners and tenants of certain property located along the Cumberland River in Nashville, Tennessee (hereinafter, the "Property"). The Tennessee Department of Transportation ("TDOT") sought to condemn a portion of the Property for the construction of a bridge spanning the Cumberland River. With this stated purpose, TDOT entered into negotiations with Emily A. Magid, Elise S. Small, and Shelby Land, LLC (collectively, the "Landowners") and PSC Metals, Inc. (the "Tenant"). Both Landowners and Tenant agreed to hire Tune, Entrekin & White to represent them in these negotiations, which eventually led to TDOT paying the parties $5,386,827.40 (the "Condemnation Award").

After the Landowners and Tenant were unable to agree as to the allocation of the Condemnation Award, they entered into an Escrow Agreement and appointed Tune, Entrekin & White escrow agent. Under the Escrow Agreement, the parties agreed that they each reserved all rights with respect to the Condemnation Award and were not bound by previous negotiations. Escrow Agreement at ¶ 3. Any allocation suggested by TDOT was not admissible. *Id.* The Condemnation Award was to be invested in a money-market account by the escrow agent. *Id.* at ¶ 4. If the parties were unable to reach an agreement within 70 days, the Condemnation Award would be deposited with the Clerk of the Circuit Court for Davidson County, Tennessee. *Id.* at ¶ 5(b). The Escrow Agreement specifically stated:

> The parties agree that neither this Agreement nor any action by the Escrow Agent shall prejudice or constitute a waiver of any party's right to proceed in any court of competent jurisdiction including, but not limited to, pursuing any rights of removal from state court to federal court. Upon the deposit of the Condemnation Award into court, the parties agree that the Escrow Agent shall not be a necessary party to any lawsuit.

*Id.* The parties were unable to come to an agreement concerning allocation of the Condemnation Award, and on March 15, 2002, Tune, Entrekin & White filed this Complaint of Interpleader in the Circuit Court for Davidson County, Tennessee.

On March 25, 2002, Tenant filed a Notice of Removal pursuant to 28 U.S.C. § 1332, claiming that the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the true parties. Although all Landowners and Tune, Entrekin & White are residents of Tennessee, Tenant is an Ohio corporation with a principal place of business in Cleveland, Ohio. On May 3, 2002, Landowners filed a Motion to Remand this action to the Circuit Court for Davidson County, Tennessee. Tenants filed a Response in Opposition to Landowner's Motion to Remand on May 20, 2002, and

Landowners answered with a Reply to Tenant's Response on June 4, 2002.

## II. Removal and Realignment of Parties

■ It is undisputed that there is more than $75,000 in dispute; the issue is whether there is complete diversity. Under 28 U.S.C. § 1441, all defendants in the state court action must consent to removal to federal court. *See Nixon v. James,* 174 F.Supp.2d 739, 743 (M.D.Tenn.2001). There are exceptions where a defendant has not been served with process at the time or removal, where a defendant is merely nominal, or where the removed claim is a separate and independent claim. *Id.* None of these exceptions are applicable here. Additionally, however, misaligned parties must be realigned by the federal court in accordance with their actual interests before determining diversity and propriety of removal. Thus, the federal district court is not bound by the technical form of the state proceedings. *See Sersted v. Midland–Ross Corp.,* 471 F.Supp. 298, 299 (E.D.Wis.1979).

The seminal case is *City of Indianapolis v. Chase National Bank,* where Justice Frankfurter held: "It is our duty, as it is that of the lower federal courts, to 'look beyond the pleadings, and arrange the parties according to their sides in the dispute.'" 314 U.S. 63, 69, 62 S.Ct. 15, 86 L.Ed. 47 (1941) (quoting *City of Dawson v. Columbia Ave. Saving Fund, Safe Deposit, Title & Trust Co.,* 197 U.S. 178, 180, 25 S.Ct. 420, 49 L.Ed. 713 (1905)). Thus, in determining whether there is diversity jurisdiction, the court should determine if there is the necessary "collision of interest" between the plaintiff and defendant by looking at the principal purpose and primary matter of the suit. *Id.* The *City of Indianapolis* Court also noted the basis for strictly construing grants of federal diversity jurisdiction: "The dominant note in the successive enactments of Congress relating to diversity jurisdiction is one of jealous restriction, of avoiding offense to state sensitiveness, and of relieving the federal courts of the overwhelming burden of 'business that intrinsically belongs to the state courts' in order to keep them free for their distinctive federal business." *Id.* at 76, 62 S.Ct. 15 (quoting Friendly, *The Historic Basis of Diversity Jurisdiction,* 41 Harv.L.Rev. 483, 510 (1928)). Giving due regard to the independence of state courts, Justice Frankfurter continued, requires that federal courts "scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Id.* at 77, 62 S.Ct. 15 (quoting *Healy v. Ratta,* 292 U.S. 263, 270, 54 S.Ct. 700, 78 L.Ed. 1248 (1934)). The Sixth Circuit has interpreted *City of Indianapolis* to require the district court to align the parties "in accordance with the primary dispute in the controversy, even where a different, legitimate dispute between the parties supports the original alignment." *United States Fidelity & Guaranty v. Thomas Solvent Co.,* 955 F.2d 1085, 1089 (6th Cir.1992).[1]

■ It is clear in this case that Tune, Entrekin & White has no interest in the apportionment of the Condemnation Award. In an interpleader case, the nominal plaintiff is merely formal and should be disregarded for purposes of determining diversity. *Alling v. C.D. Cairns Irrevocable Trusts Partnership,* 889 F.Supp. 768, 770 (D.Vt.1995). The real dispute is be-

---

1. The Third, Fourth, Fifth, and Ninth Circuits agree with this "primary dispute" test, while the Second, Seventh, Eighth, and Tenth Circuits use a "substantial dispute" test where realignment is improper if there is any substantial conflict between the opposing parties.

*Aetna Casualty & Surety Co. v. Dow Chemical Co.,* 44 F.Supp.2d 870, 874–75 (E.D.Mich. 1999). In this case, the parties could be realigned under either test, because Tune, Entrekin & White is only a nominal party.

tween the two defendants, Landowners and Tenant, so they can be realigned as opposing parties for determining diversity jurisdiction.

### III. Designation of Plaintiff and Defendant

It is clear that Landowners and Tenant are the opposing parties in this dispute, and that they are residents of different states. The removal issue ultimately comes down to which party will be designated as plaintiff and which party will be designated as defendant. If Tenant is plaintiff and Landowners are defendants, then the defendants will be residents of the state in which the original action was filed so there can be no removal and the case should be remanded. If Tenant is defendant and Landowners are plaintiffs, then the case was properly removed by the defendant and the case should not be remanded.

Landowners, of course, argue that they should be defendants and Tenant should be plaintiff. Tenant argues that it should be aligned as defendant because the Landowners chose to dispute the allocation of the Condemnation Award by TDOT. Landowners respond that this argument is impermissible based on the Escrow Agreement, which states that the parties agree that the award has not been allocated and TDOT's allocation would not be binding. Escrow Agreement at ¶ 3. Secondly, Tenant argues that it would be a waste of judicial resources to align it as plaintiff and remand, because Tenant will then only nonsuit the case under Tenn.R.Civ.P. 41 and refile in federal court. Landowner responds that whatever Tenant's strategic behavior in the future might be should not be considered in deciding the issue presently before the court.

Only a few other district courts have dealt with this issue. In *Hidey v. Waste Systems International, Inc.*, an escrow agent filed an interpleader action in Maryland state court against a buyer, seller, and the seller's third-party beneficiaries. 59 F.Supp.2d 543, 544 (D.Md.1999). The buyer of the assets, a Delaware corporation with its principal place of business in Massachusetts, removed the action to federal court, and the seller, a citizen of Maryland, moved to remand. *Id.* at 545. The court recognized that realignment was necessary, that the interpleader was only a nominal party, and that the case would come down to how the parties were realigned. *Id.* at 546. The parties were diverse, but if the sellers remained defendants then removal would be improper. *Id.* As the court stated it, "There is a dearth of case law on the issue of determining the proper designation of realigned parties." *Id.* Each party argued that the other side was claiming entitlement to the funds, so that side should be plaintiff, so "any inquiry along this line ultimately is futile." *Id.* The court then approached the problem from a new angle: "Very simply, the realigned parties should be positioned so that their rights are the same as they would have been had they not been artificially aligned as co-defendants in the interpleader action." *Id.* The court designated the buyer as defendant, because it would have had the right to proceed in federal court regardless of which party first filed suit. *Id.* In other words, if the sellers had initiated litigation, then the buyers could have removed the action to federal court. *Id.* However, if the buyers had initiated the action, they could have just brought it in federal court because of diversity. *Id.* Thus, the buyer's preference and right to proceed in federal court should be honored, and the buyer should be designated as defendant in the realignment. *Id.* This case supports Tenant and denial of the Motion to Remand.

There are also several unreported cases, however, which come to the opposite con-

clusion. Landowners cite two of them in support of their motion to remand: *Mandalay Oil & Gas* and *Transamerica Insurance*. In *Mandalay Oil & Gas v. Energy Development Corp.*, an oil and gas company filed an interpleader action in Louisiana state court to determine which of two groups of claimants were due royalties from its gas production. 1998 WL 850531, at *1 (E.D.La. Dec.8, 1998). One of the groups of defendants were all residents of Louisiana and the other group were New Jersey and Delaware corporations. *Id.* The corporations removed the action, and the Louisiana claimants sought remand to state court because some of the claimants were Louisiana citizens and thus not all defendants consented to removal. *Id.* After emphasizing that removal statutes are to be strictly construed against removal, the court remanded the case because the removal statutes did not specifically permit removal of the action. *Id.* at *2.

In *Transamerica Insurance Company v. Stutzman,* one of the defendants removed an interpleader action to federal court, and the plaintiff and other defendant sought remand to state court. 1988 WL 80034, at *1 (E.D.Pa. July 28, 1988). The court remanded the case, finding that there was no diversity jurisdiction because the plaintiff and defendant opposing removal were citizens of the·same state, even though the defendant seeking removal was a citizen of a different state. *Id.* In a footnote, the court also noted that not all of the defendants had joined in the petition for removal, so removal was improper. *Id.* at *1 n. 3.

There are also two other unreported cases supporting remand. In *O'Keefe, Ashenden, Lyons & Ward v. National Telecommunications Consultants, Inc.,* the plaintiffs brought an interpleader action in Illinois state court to determine which of two defendants was entitled to the possession of stock held in escrow.

1991 WL 140130, at *1 (N.D.Ill. July 22, 1991). One of the defendants, TotalCom, was an Illinois corporation with its principal place of business in Illinois; the other defendant, NTC, was a New York corporation with its principal place of business in New York. *Id.* NTC filed a notice of removal to federal court, and TotalCom moved to remand to state court. *Id.* The court found that the plaintiff was neutral, so the parties *could* be realigned so that the two defendants with adverse interests opposed one another. *Id.* The court, however, refused to realign the parties and remanded the case. *Id.* TotalCom argued that it should be realigned as plaintiff, but the court found no reason for either Total-Com or NTC becoming plaintiff since neither was aligned with the original plaintiff. *Id.* The court held: "Because there is no reason why TotalCom would not be defendant in any realigned action, other than a deliberate choice by this court made solely to retain jurisdiction, the court declines NTC's invitation to realign the parties." *Id.* In other words, instead of arbitrarily deciding that one of the parties would be plaintiff, the court simply refused to realign the parties at all.

*Schwartz v. Liberty Mutual Insurance Co.,* 2001 WL 1622209 (E.D.Pa. Dec.18, 2001), may also be instructive. It involved quite different facts: a policy holder suing an insurance company, Liberty Mutual, for money due. *Id.* at *1. Another insurance company, Keystone, was joined as an indispensable party because it was entitled to contribution from Liberty Mutual. *Id.* Liberty Mutual sought removal and realignment of Keystone as plaintiff, because Keystone was a citizen of Pennsylvania like the policy holder, so realignment would create diversity. *Id.* The court refused to realign the parties and remanded the case. *Id.* at *7. The court distinguished *City of Indianapolis,* where the plaintiffs joined diverse defendants in or-

der to gain diversity jurisdiction and the Court looked beyond its pleadings to determine if its jurisdiction was validly invoked. *Id.* at *6. In *Schwartz,* by contrast, a defendant was asking the court to look beyond the pleadings to assess whether it could extend its diversity jurisdiction to a state law conflict. *Id.* The language in City of Indianapolis suggests that a federal court's duty to scrutinize the parties' alignment flowed from its limited jurisdiction, a principle that would not be furthered by realigning parties in order to *allow* federal jurisdiction. *Id.* Thus, the court held: "[T]he Supreme Court in City of Indianapolis was guided by the policy of preventing parties from manipulating federal jurisdiction. That concern weighs against realignment here." *Id.*

This case ultimately comes down to a policy decision. There is no doubt that the primary dispute here is between Landowners and Tenant and that Tune, Entrekin & White is a neutral party. Thus, this Court could realign the parties. The Tenant makes a good argument that it would be a waste of judicial time to align it as plaintiff and remand the case just so it can be nonsuited and refiled in federal court. *See Hidey v. Waste Systems Int'l, Inc.,* 59 F.Supp.2d 543, 546 (D.Md.1999). It is not clear, however, whether under Tennessee law Tenant would actually be able to nonsuit the case. It would make sense that *neither* defendant in an interpleader action could nonsuit the action, but only the escrow agent Tune, Entrekin & White. Additionally, removal statutes are supposed to be strictly construed. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–109, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). The Landowners properly point out that, under the Escrow Agreement, TDOT's allocation of the funds is irrelevant and should not be considered as a basis for making Landowners plaintiffs. The Landowners are correct that future litigation strategy by the Tenant (such as nonsuit-

ing) should not be considered in making this decision.

■ In short, placing either party as plaintiff would be arbitrary. If Landowners were made plaintiffs, it would be arbitrarily aligning the parties to manufacture federal jurisdiction. If Tenant were made plaintiff, it would be arbitrarily aligning the parties to disallow federal jurisdiction. Faced with such a decision, this Court finds persuasive those courts which have simply declined to realign the parties at all. Given that federal jurisdiction and removal statutes are supposed to be strictly construed, the Court should err in favor of remanding and allowing the state court to either decide the case or realign the parties. If the state court realigns the parties with Landowners as defendants and Tenant as plaintiff, then Tenant may well nonsuit and bring the action back into federal court. If the state court realigns the parties the opposite way, Tenant may then seek removal again based on diversity jurisdiction. However, the state court may also decline to align either party as plaintiff since neither really shared an interest with Tune, Entrekin & White, or the state court may not allow Tenant to nonsuit since the interpleader action was brought by Tune, Entrekin & White. This is a state law question that this Court will let the state courts decide.

The language in *City of Indianapolis* and other cases could be read to *require* this Court to realign the parties when determining jurisdiction. *See First Nat'l Bank of Chicago v. Mottola,* 302 F.Supp. 785, 789 (N.D.Ill.1969) ("Such realignment is required both where it has the effect of defeating or creating jurisdiction."). In a case such as this one, however, where the plaintiff is dropping out completely and the two defendants are indistinguishable in terms of who should be plaintiff and who should be defendant, realignment should

be exercised with caution if it would expand federal jurisdiction. *See Schwartz v. Liberty Mutual Insur. Co.*, 2001 WL 1622209 (E.D.Pa. Dec.18, 2001); *O'Keefe, Ashenden, Lyons & Ward v. Nat'l Telecommunications Consultants, Inc.*, 1991 WL 140130 (N.D.Ill. July 22, 1991).

## IV. Conclusion

For the foregoing reasons, the Court GRANTS Landowners' Motion to Remand without realigning the parties. The case is remanded to the Circuit Court for Davidson County, Tennessee.

An appropriate order will enter.