690 F.Supp. 40 (1988)
AMERICAN HORSE PROTECTION ASSOCIATION, Plaintiff,
v.
Richard E. LYNG, Secretary, United States Department of Agriculture, Defendant,
Tennessee Walking Horse Breeders' and Exhibitors' Association, Inc., Defendant/Intervenor.
Civ. A. No. 84-3298-OG.
United States District Court, District of Columbia.
July 5, 1988.
Russell J. Gaspar, Washington, D.C., for plaintiff.
Patricia Carter, Asst. U.S. Atty., Washington, D.C., for defendant.
*41 Edward T. Colbert, Washington, D.C., Walter W. Bussart, R. Stephen Doughty, Nashville, Tenn., for Tennessee Walking Horse Breeders' and Exhibitors' Ass'n, Inc.

MEMORANDUM
GASCH, Senior District Judge.

INTRODUCTION
This matter is before the Court on plaintiff's motion for preliminary and/or permanent injunction. On June 20, 1988, this Court temporarily restrained the Tennessee Walking Horse Breeders' and Exhibitors' Association, Inc. ("Breeders' and Exhibitors' Association") from prosecuting an action filed on June 10, 1988, in the United States District Court for the Middle District of Tennessee. The Breeders' and Exhibitors' Association brought suit in Tennessee to enjoin the Secretary from enforcing the Interim Rule adopted in the aftermath of this Court's order of March 21, 1988, which invalidated then existing regulations.[1]
Plaintiff now seeks a preliminary and/or permanent injunction to enjoin the prosecution of the Tennessee action. The Breeders' and Exhibitors' Association has failed twice in its efforts, before this Court and the United States Court of Appeals for the District of Columbia Circuit, to stay the effect of this Court's March 21, 1988 order and restore the status quo ante pending the outcome of the Secretary's rulemaking that is now well underway. Now in Tennessee, it seeks to enjoin the enforcement of the Secretary's Interim Rule issued April 22, 1988. In the alternative, the Breeders' and Exhibitors' Association has asked the Tennessee Court to postpone the effective date of the next phase of pad reduction under 9 C.F.R. § 11.2(b)(10)(ii).
Plaintiff asserts that the parties and issues in the two actions are intrinsically related, arising out of the same underlying facts. Further, plaintiff asserts that this litigation is so far advanced in this Court that the prosecution of the Tennessee litigation is duplicative and should be enjoined.
On May 20, 1988, the U.S. Court of Appeals for the District of Columbia Circuit ordered that the Breeders' and Exhibitors' Association be permitted to intervene in this action and directed this Court to consider the Breeders' and Exhibitors' Association's motion for a stay of the March 21, 1988 order. That motion addressed the effects of an advisory letter that the Secretary had issued on March 25, 1988, subsequent to the ruling of this Court. On May 25, 1988, this Court ruled that in view of the promulgation of interim rules that had supplanted the advisory letter on April 25, 1988:
[I]t would be inappropriate to stay the hand of the Secretary in the performance of his administrative duties to promulgate rules in accordance with the prior order of the Court of Appeals ... the order of this Court, issued pursuant to the ruling of the Court of Appeals heretofore noted and the act of Congress called the Horse Protection Act.
Order, filed May 25, 1988. The Court denied the motion for a stay without prejudice, and ordered that when the Secretary's rules are available for consideration by the parties, the motion for stay may be reconsidered if either party promptly moves for it.

DISCUSSION

A. Jurisdiction

Because an appeal of the Court's decision of March 21, 1988 has been noticed by the Breeders' and Exhibitors' Association, the question of this Court's jurisdiction must be addressed. If the Court has retained jurisdiction over the issues raised in the Tennessee litigation, it may properly consider the application for an injunction against the prosecution of the Tennessee action.
*42 In a case involving the validity of a notice of appeal filed after the entry of the District Court's judgment but while the appellant's motion to alter or amend that judgment remained pending in the District Court, the United States Supreme Court stated that the filing of a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982) (emphasis added). The Breeders' and Exhibitors' Association's appeal of this Court's March 21, 1988, decision attacks the Court's opinion only as it relates to that portion of this Court's order invalidating 9 C.F.R. § 11.2(b)(1), (2), and (10). The appeal does not involve the Court's directive that the Secretary go to rulemaking, nor does it address the interim actions taken by the Secretary. Indeed, the Court of Appeals on June 10, 1988, denied the Breeders' and Exhibitors' Association's emergency motion for a stay because it was principally focused on the alleged harm that will be suffered by virtue of the Interim Rule. Because the Interim Rule was not properly before the Court of Appeals, it declined to review it or grant any relief from its alleged effects. It is clear that the Breeders' and Exhibitors' Association's notice of appeal failed to divest this Court of its jurisdiction over aspects of this case that are presented in the Tennessee action, to the extent that they are not barred.
Furthermore, as the Court's decision of March 21, 1988, was not stayed, the vitality of the decision is "undiminished by the pendency of the appeal," and the decision remains operative. Deering Milliken, Inc. v. FTC, 647 F.2d 1124, 1129 (D.C.Cir.1978). In addition, this Court retains the power to grant an injunction in this case. Securities Industry v. Board of Governors of the Federal Reserve System, 628 F.Supp. 1438, 1440 n. 1 (D.D.C.1986) (citing Venen v. Sweet, 758 F.2d 117, 120 n. 2 (3d Cir.1985)); see Fed.R.App.P. 8. This Court has already declined to stay the hand of the Secretary in the performance of his administrative duties. See Order of May 25, 1988. But that denial was without prejudice; the Court stated that it would reconsider the motion for a stay at the time that the final rules are available for consideration. This Court has jurisdiction over the matter raised in the application for injunctive relief.

B. Standards for Injunctive Relief

In order to issue injunctive relief in the District of Columbia, the plaintiff must show: (1) a strong likelihood of success on the merits; (2) that without an injunction, it will be irreparably harmed; (3) that the issuance of the injunction will not substantially harm other interested parties; and (4) that the public interest favors injunction. Virginia Petroleum Jobbers Ass'n v. FPC, 259 F.2d 921, 925 (D.C.Cir.1958) (per curiam). "Although the fundamental fairness of preventing irremediable harm to a party is an important factor on a preliminary injunction application, the most compelling reason in favor of entering a Rule 65(a) order is the need to prevent the judicial process from being rendered futile by defendant's action or refusal to act." 11 C. Wright & A. Miller, Federal Practice and Procedure § 2947 (Supp.1986) (emphasis added).

1. Likelihood of Success on the Merits

It is clear that a federal court can enjoin the prosecution of an action where the same issues are presented in another federal court. Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952). The considerations involved in determining that injunctive relief is appropriate are varied. In this Circuit, the factors central to the issue of enjoining the prosecution of a later-filed action in another district relate to the conservation of judicial resources and comprehensive disposition of litigation. Columbia Plaza Corp. v. Security National Bank, 525 F.2d 620, 627-28 (D.C. Cir.1975). These factors include: the identity of the parties; the risk of inconsistent adjudications; the location of counsel familiar with the litigation; how far advanced each action is; and, in general, "equitable considerations genuinely relevant to the *43 ends of justice," relating to the expeditious determination of the case without "unnecessary multiplication of litigation." Id. at 626-29. See also Kentucky Fried Chicken v. Diversified Packaging, 552 F.2d 601, 603 (5th Cir.1977) (suggesting that the familiarity of judge in prior proceedings is an added factor, particularly where complicated issues are involved); Martin v. Graybar Electric Co., 266 F.2d 202, 204 (7th Cir. 1959) (suggesting that the party filing later in time should be enjoined from further prosecution of his suit). Additionally, the common origin of the two actions weighs in favor of a matter being adjudicated in a single forum. Columbia Plaza Corp., 525 F.2d at 626.
In the matter at hand, these considerations weigh heavily in favor of this Court remaining the forum in which the comprehensive disposition of the litigation should be accomplished. If not identical, the issues presented in the Tennessee litigation are inextricably intertwined with the litigation here. Moreover, the common origin of the two actions weighs in favor of the comprehensive resolution of this case in one forum. The parties are essentially the same in both actions, with the exception that, in light of the temporary restraining order here, the American Horse Protection Association's motion to intervene as of right in the Tennessee action has been held in abeyance. The Secretary, the defendant in both actions, supports the entry of an injunction and believes the matter should be heard by this Court. Indeed, the government moved to dismiss or transfer the Tennessee action to this Court, but that motion has been held in abeyance as well.
Additionally, there is a grave risk of inconsistent adjudications, in that this Court has already indicated that it "will not stay the hand of the Secretary" in carrying out his administrative duties, but would allow a motion for a stay to be renewed at the time the rules are available for consideration. Furthermore, this action is extremely advanced. There exists a substantial body of law of the case, both in this Court's decisions and in the decision by the Court of Appeals prior to remand, 812 F.2d 1 (D.C. Cir.1987). As stated previously in the jurisdictional discussion, the question of the validity of the Interim Rule remains before this Court to the extent that it is not barred, as the notice of appeal has not divested the Court of that issue.
The nature of the complaint filed by the Breeders' and Exhibitors' Association in Tennessee also supports the need for this Court to be the forum for the comprehensive disposition of the litigation. In that complaint, the Breeders' and Exhibitors' Association alleges, among other things, that the Secretary has "made an erroneous interpretation of the Court's rulings." Plaintiff's Exhibit D at ¶ 12. What better forum than here to determine whether an erroneous interpretation has been made. In addition, the complaint alleges that the Interim Rule was adopted without "observance of procedure required by law." Id. ¶ 13(c). The seat of the federal government is here, the situs of the Secretary's actions is here, as is the administrative record developed in the promulgation of the Interim Rule. The choice of Tennessee by the Breeders' and Exhibitors' Association has more than a faint semblance of forum shopping aimed at evading the denial of relief from this Court and the United States Court of Appeals for the District of Columbia Circuit. These are equitable considerations that clearly relate to the ends of justice, and weigh in favor of enjoining the prosecution by the Breeders' and Exhibitors' Association in another forum of issues inextricably involved in the District of Columbia litigation.
The Breeders' and Exhibitors' Association asserts that the D.C. Circuit "has held that in a situation where judgment has been entered in one court and then a second suit is filed which is arguably repetitious of the first suit, a showing of harassment, bad faith or other strong equitable circumstances should be made in order to justify issuance of an injunction for prosecution of the second action. Laker Airways v. Sabena, Belgian World Airlines, 731 F.2d 909, 928 n. 24 (D.C.Cir. 1984)." Breeders' and Exhibitors' Association Memorandum at 8. In fact, there has been no such holding by the Court of Appeals, *44 and there is no need in this jurisdiction for plaintiff to establish harassment, bad faith or other strong equitable circumstances in order to obtain injunctive relief.
In Laker Airways, the Court of Appeals affirmed Judge Harold H. Greene's issuance of a preliminary injunction restraining the defendants in that case from participating in a foreign action that was filed in an effort to prevent the United States District Court from considering the antitrust claims in that case. The Court of Appeals held that both the United States and Great Britain shared concurrent prescriptive jurisdiction over transactions giving rise to the antitrust plaintiff's claim. Laker, 731 F.2d at 926. The Court also held that principles of comity and concurrent jurisdiction authorized a defensive preliminary injunction, which would allow the United States action to go forward in this country free of foreign proceedings designed solely to divest the United States Court of its jurisdiction. Id. at 955.
The portion of the opinion immediately preceding the citation relied upon by the Breeders' and Exhibitors' Association states that
Courts have a duty to protect their legitimately conferred jurisdiction to the extent necessary to provide full justice to litigants.... When the injunction is requested after a previous judgment on the merits, there is little interference with the rule favoring parallel proceedings in matters subject to concurrent jurisdiction. Thus a court may freely protect the integrity of its judgments by preventing their evasion through vexatious or oppressive relitigation.

731 F.2d at 928.
The Laker case is inapposite to this case for many reasonsit involves a situation in which consideration of antitrust claims in an action pending before a United States District Court was threatened by the filing of an action in Great Britain, and thus involved considerations of extraterritorial jurisdiction as well as the principles of comity in the international realm. But an analogy contrary to one that the Breeders' and Exhibitors' Association might prefer is also presented by the Laker case: In the case at hand, the Breeders' and Exhibitors' Association is attempting to divest this Court of the jurisdiction that it clearly has over the issues raised in the Tennessee litigation. Those issues are inextricably intertwined with this litigation. It presents the very real threat of vexation of the other parties to this action, as well as an attempt to evade the decisions of the courts of this jurisdiction. The Court will not condone the efforts of the Breeders' and Exhibitors' Association to evade its jurisdiction and its prior rulings. The Court holds that the plaintiff has established the likelihood of success on the merits.

2. Irreparable Injury

The plaintiff has demonstrated that it will be irreparably injured if a preliminary injunction is not issued. Unless the prosecution of the Tennessee case is enjoined, plaintiff will face an expensive, time-consuming action, as well as a vexatious attempt to relitigate issues already decided and to raise issues that more properly can be determined by this Court. Kentucky Fried Chicken, 552 F.2d at 603.

3. Harm to Other Interested Parties

The government supports the motion for a preliminary and/or permanent injunction, so no harm to the government can be derived from granting the relief sought. Additionally, the Breeders' and Exhibitors' Association will not suffer irreparable harm if enjoined from prosecuting its recently filed case in Tennessee. Its challenge to the Interim Rule to the extent that it is not barred can appropriately be heard by this Court. This Court has jurisdiction over the parties and the subject matter. The familiarity of this Court with its own rulings cannot be gainsaid. Requiring the Breeders' and Exhibitors' Association to litigate its claim here, rather than in Tennessee, cannot be construed as injury to the Breeders' and Exhibitors' Association.
It has been suggested that the claims and issues raised by the Tennessee litigation are issues that were or could have been raised in the stay motions entertained in this jurisdiction, and as such are barred by res judicata. It is evident that the *45 motions for a stay considered in this jurisdiction and the action filed in Tennessee seek identical results: the setting aside of any interim rule pending rulemaking or delaying the effect of the Interim Rulein other words, returning to the status quo ante. It must be reiterated that the motion for a stay considered by this Court was denied without prejudice. Additionally, the Court notes that it was the Breeders' and Exhibitors' Association that decried the setting aside of the old regulations because of the need for some regulations in their stead.

4. Public Interest

The public interest in "the conservation of judicial resources and comprehensive disposition of litigation" will be served by the issuance of an injunction. This Court retains jurisdiction over those issues inextricably intertwined with the litigation here, except to the extent that the Court of Appeals has divested this Court of jurisdiction. The interests of avoiding inconsistent results and conflicting decisions, which might impair the Secretary's progress in his rulemaking function cannot be overlooked. Additionally, the strong public interest in the continued enforcement of the Horse Protection Act weighs in favor of enjoining the Breeders' and Exhibitors' Association from prosecuting its claim in Tennessee. It would not be in the public interest to subject the Secretary to two potentially conflicting rulings.

C. Permanent Injunction

Plaintiff has suggested that the Court consolidate the merits of this matter with the hearing on the preliminary injunction. See Fed R.Civ.P. 65(a)(2). Since no factual dispute exists as to the ground on which the injunction is sought, there is no need for an evidentiary hearing on the matter. As all counsel present at oral argument indicated that their arguments on the matter of a permanent injunction would not differ from the arguments already presented, there is no need for further proceedings on the injunctive relief sought. Nonetheless, at oral argument counsel for the Breeders' and Exhibitors' Association indicated the desire for the Court to afford him the opportunity to establish the injury that the Breeders' and Exhibitors' Association might suffer from the entry of a permanent injunction. In the interest of fairness, the Court will allow the Breeders' and Exhibitors' Association to make such a showing prior to the Court's consideration of entering a permanent injunction.

CONCLUSION
This is a preliminary injunction. The Court finds that, according to the standards stated by the United States Court of Appeals for the District of Columbia Circuit, plaintiff has shown a likelihood of success on the merits. Plaintiff has also demonstrated that without preliminary injunction it will be irreparably harmed. The Court also finds that no party will be harmed by the entry of a preliminary injunction, nor will injunction be detrimental to the public interest. Indeed, the public interest will be served by the injunction sought by plaintiff. An appropiate order shall accompany this memorandum.

ORDER
Upon consideration of the plaintiff's motion for a preliminary and/or permanent injunction, defendant/intervenor's opposition thereto, the oral arguments presented by counsel in open court, the entire record in this case, and for the reasons set forth in the accompanying memorandum, it is by the Court, this 5th day of July, 1988,
ORDERED that the Tennessee Walking Horse Breeders' and Exhibitors' Association, Inc., its officers, agents, servants, employees, and attorneys, and all persons acting in concert with them be and hereby are preliminarily enjoined from performing any act or doing any thing in further prosecution of the litigation styled Tennessee Walking Horse Breeders' and Exhibitors' Association v. Lyng, Civil No. 1-88-0401, now pending in the United States District Court for the Middle District of Tennessee; and it is further
ORDERED that within 10 days of this order, the Tennessee Walking Horse Breeders' and Exhibitors' Association may demonstrate in writing why a permanent injunction *46 should not be entered in this matter; and, within 5 days of any filing by Tennessee Walking Horse Breeders' and Exhibitors' Association, plaintiff and the government may respond in writing to that filing.
NOTES
[1] Because weekends and holidays do not count in the computation of the ten-day life of a temporary restraining order, the temporary restraining order in this case will expire on July 5, 1988. See Fed.R.Civ.P. 6(a). Plaintiff has moved to extend the temporary restraining order to July 5, 1988, but under the rules, it will not expire until that day.