### In re: MANAGED CARE LITIGATION

This Document Relates to
Provider Track Cases

No. 1334, 00–1334–MD.

United States District Court,
S.D. Florida,
Miami Division.

Dec. 12, 2002.

*ORDER GRANTING PLAINTIFFS'*
*MOTION FOR PRELIMINARY*
*INJUNCTION*

MORENO, District Judge.

THIS MATTER came before the Court upon Plaintiffs' Motion for Preliminary In-junction and Supporting Memorandum of Law (D.E.# 1702), filed on November 5, 2002, Supplement to Provider Plaintiffs' Motion for Preliminary Injunction (D.E.# 1753), filed on November 20, 2002, and Plaintiffs' Reply and Amended Motion for Preliminary Injunction (D.E.# 1760), filed on December 2, 2002.

THE COURT has considered the motions, responses and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

ADJUDGED that the Motion is GRANTED. Accordingly, pursuant to the All Writs Act, 29 U.S.C. § 1651(a), the Court ENJOINS CIGNA, its attorneys John Harkins and the firm of Harkins and Cunningham, and any party acting in concert with CIGNA, from proceeding in any manner with the proposed settlement that has been "preliminarily" approved in the *Kaiser et al v. CIGNA Corp. et al,* Civil Action No. 02–1179–GPM, United States District Court for the Southern District of Illinois, without the express approval of this Court, and from contacting in any way the members of the class certified by this Court.

## I. Background

28 U.S.C. § 1407 authorizes the creation of the Judicial Panel on Multidistrict Litigation ("JPML") to determine, when civil actions involving one or more common questions of fact are pending in different districts, whether such actions should be consolidated or coordinated for pretrial proceedings. Factors relevant in the JPML decision are whether transfers for such proceedings will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions. 28 U.S.C. § 1407(a). Multidistrict litigation is also subject to a special set of Rules of Procedure. *See* Fed. R. Proc. J.P.M.L. ("MDL Rules").

The JPML consolidated various actions brought by providers against the eight managed care insurance companies defendants on April 13, 2000.[1] On October 23, 2000, the JPML consolidated additional MDL actions pending before various courts into MDL 1334 because they all involve common questions of fact concerning whether defendants—either singly or as part of a conspiracy—implemented certain policies, which unlawfully interfered with health care providers' delivery of care to their patients. The JPML determined that:

> transfer to a single district under Section 1407 has the salutary effect of placing all the related actions before a single judge who can formulate a pretrial program that: 1) allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues, *In re Multi–Piece Rim Products Liability Litigation,* 464 F.Supp. 969, 974 (Jud. Pan.Mult.Lit.1979); and 2) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties.

*In re Managed Care Litigation,* 2000 WL 1925080 (Jud.Pan.Mult.Lit.2000). This Court has been managing the consolidated case for over two years now. Orders on several major issues have been rendered, most notably an order granting class certification status to the Provider Plaintiffs, entered on September 26, 2002.[2]

## II. The Current Dispute

This Court first learned of the current dispute on November 5, 2002, when Plaintiffs filed their first Motion for Preliminary Injunction requesting that this Court enjoin CIGNA, and those acting in concert with CIGNA, from pursing settlement of the claims at issue in this action in any other forum without the express approval and involvement of this Court. At that time, CIGNA was apparently involved in a parallel Illinois state court class action and was participating in settlement negotiations that may have had an impact on this multidistrict litigation.[3] The plaintiffs in the Illinois state court case moved to enforce a settlement agreement they had reached with CIGNA. That motion prompted the action by Plaintiffs in this Court to prevent the settlement from being enforced.

Since that initial motion was filed, however, much activity has occurred in both state and federal courts in Illinois that now renders the initial dispute moot. First, on November 22, 2002, Illinois state court plaintiffs' counsel amended the complaint to create federal jurisdiction and to state for the first time claims for RICO violations, conspiracy to commit RICO viola-

---

1. The original Complaint was filed in the Western District of Kentucky as *Charles B. Shane, M.D., et al v. Humana, Inc., et al,* W.D. Ky., C.A. No. 3:00–53, and listed only Humana and its subsidiaries as Defendants.

2. The certified class includes:

   **The Global Class:** All medical doctors who provided services to any person insured by any Defendant from August 4, 1990 to September 30, 2002.

   **National Subclass:** Medical doctors who provided services to any person insured by a Defendant, when the doctor has a claim against such Defendant and is not bound to arbitrate the claim.

   **California Subclass:** Medical doctors who provided services to any person insured in California by any Defendant when the doctor was not bound to arbitrate the claim being asserted. *In re Managed Care Litigation,* 209 F.R.D. 678, 2002 WL 31154945 (S.D.Fla. 2002).

3. The Illinois state court class was smaller than the Plaintiffs class certified in this Court. The Illinois class, once the case was removed to federal court, expanded to encompass this Court's entire Plaintiff class against CIGNA.

tions, unjust enrichment, prompt pay violations and ERISA claims.[4] The amended complaint also changed the class definition, even though the smaller class of PPO only providers had been certified for approximately 18 months, so that it encompasses the entire class this Court had already certified on September 26, 2002.

On Monday, November 25, 2002, at 10:38 a.m., CIGNA removed the case to federal district court, where it became *Timothy N. Kaiser, M.D., et al v. CIGNA Corp.,* Civil No. 02–1179–GPM (S.D.Ill.)(*"Kaiser"*). That afternoon, the case was reassigned to Judge Murphy.

On Tuesday, November 26, 2002, at 9:11 a.m., CIGNA and the Illinois Plaintiffs filed a settlement agreement dated November 25, 2002, and a motion requesting preliminary approval of the settlement and conditional certification of a settlement class. The motion did not reveal to the Judge the fact that the requested class encompassed a class previously certified by this Court, the pendency of the Injunction Motion, or the imminent injunction hearing (scheduled for December 3, 2002). That same day, at 10:05 a.m., Judge Murphy conducted a preliminary settlement approval hearing, and granted preliminary approval of the settlement by 10:25 a.m. The settlement purports to settle, among other things, RICO claims, conspiracy claims, and slow pay claims that were not even part of the lawsuit until November 22, 2002.

Plaintiffs have now filed an amended motion outlining the activities since November 22, 2002, and request an injunction which would have the ultimate effect of enjoining an action in a fellow federal court.

## III. Analysis

### A. Federal Courts Power to Enjoin Parties Before It

The All Writs Act, 28 U.S.C. § 1651(a), confers "extraordinary powers" upon federal courts. *See ITT Community Dev. Corp. v. Barton,* 569 F.2d 1351 (5th Cir. 1978). The Act provides: "the Supreme Court and all courts established by this Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). With respect to this Act, the Supreme Court has emphasized that " 'a federal court may avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it.' " *United States v. New York Tel. Co.,* 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977)(quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942)).

■ While these powers are extraordinary, they are also "firmly circumscribed." *ITT Community,* 569 F.2d at 1358. The scope of a federal court's power under the All Writs Act depends on the nature of the case before the court and the legitimacy of the ends sought to be achieved through the exercise of the power. *See In re Lease Oil Antitrust Litigation,* 48 F.Supp.2d 699 (S.D.Tx.1998). A court may not rely on the Act to enjoin conduct that is "not shown to be detrimental to the court's jurisdiction," instead, any order under the Act must be "directed at conduct which, left unchecked, would have had the practical effect of diminishing the court's power

4. This is the second attempt by the Illinois plaintiffs to have this case in federal court. The Illinois plaintiffs first filed five separate actions in the Southern District of Illinois. They actively participated in settlement dis-

cussions in the case that landed before Judge Murphy. When counsel for the Plaintiffs in this case gave notice to the JPML of these pending related actions, the Illinois Plaintiffs voluntarily dismissed all five actions.

to bring the litigation to its natural conclusion." *ITT Community Dev. Corp.*, 569 F.2d at 1359.

Thus, even though the powers under the Act are in general narrowly circumscribed, the Act frequently enables a court to issue preliminary orders which will quell a threat to the proper exercise of its jurisdiction.

Several district courts have determined that a federal court's inherent power under the All Writs Act allows it to enter an injunction which would have preclusive effect on a *state* court's action, where the possibility existed that the defendants would attempt to reach an inadequate or collusive settlement in the state court proceeding and "settle on the cheap." *In re Lease Oil Antitrust Litigation*, 48 F.Supp.2d 699 (S.D.Tx.1998); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, (7th Cir.2002). This is so even in the face of the Anti–Injunction Act which explicitly prohibits federal courts from enjoining state courts unless one of three narrow exceptions are met.

Clearly, the situation facing this Court is different than if it were presented with the original dispute, that is, to enjoin a state court proceeding. The caselaw is sparse, if not non-existent in situations where part of a consolidated MDL federal case was settled in a different federal court, because of a loop-hole in 28 U.S.C. § 1407 and the MDL Rules. This Court is hard-pressed to believe that counsel for CIGNA is the first to imagine these maneuvers to avoid a MDL Court's jurisdiction, yet that appears to be the case.

Plaintiffs claim *In re Lease Oil* is instructive. There, multiple related law suits were brought against a number of oil companies in both state and federal court. One of the oil company defendants entered into a purported "global settlement agreement" with the plaintiffs in one of the state court actions that released all federal and state law claims pending against that defendant. *In re Lease Oil*, 48 F.Supp.2d. at 701. Shortly thereafter, and while the JPML was considering whether all of the federal actions should be consolidated in one court for coordinated pretrial proceedings, the plaintiffs in one of the federal actions entered into a separate "global settlement agreement" with the defendants. *Id.* at 702. Before the federal settlement was approved, the actions were transferred by the JPML to the Southern District of Texas. Upon receipt of the actions, the Texas District Court entered an order pursuant to the All Writs Act enjoining all parties in the MDL action from entering into any settlement agreement that would release federal claims at issue in the cases. The injunction prohibited the parties from entering into any settlement that would release any pending federal claims, regardless of the forum in which the settlement agreement would be filed. The court reasoned that although courts normally lack the power to enjoin absent class members, they do have power over the parties before them. "This includes the power to enjoin the defendant from entering into a settlement class action with another plaintiff in another forum, at least without notice to the court and its approval." *Id.* at 706. This injunction then, applied to federal actions as well as state court proceedings.

CIGNA dismisses Plaintiffs reliance on *In re Lease Oil* as misplaced because its rationale concerned mostly the ability of a federal court to infringe upon state court proceedings, it was a sua sponte court order, and it was from another district court in another circuit.

CIGNA instead argues the requested injunction is not "necessary or appropriate in aid of" this Court's jurisdiction. CIGNA claims that because Congress chose to use the same language, "necessary or ap-

propriate in aid of," in both the All Writs Act and the Anti–Injunction Act, CIGNA's analysis of the Anti–Injunction Act,[5] presented in it opposition to Plaintiffs motion for preliminary injunction, remains applicable. Because of minimal authority addressing the extraordinary remedy of an anti-suit injunction against another federal court, CIGNA claims Anti–Injunction Act precedent provides important guidance in determining whether the All Writs Act's "in aid of jurisdiction" standard is met. *See, Newby v. Enron,* 302 F.3d 295, 301 (5th Cir.2002) ("The [All Writs] Act contains the same language as the second of the three exceptions in the Anti–Injunction Act, and the parallel 'necessary in aid of jurisdiction' language is construed similarly in both the All Writs Act and the Anti–Injunction Act.").

The basis of CIGNA's argument is that concurrent jurisdiction is not mutually destructive in *in personam* cases, even if it leads to res judicata, and the general rule is that nothing short of a final order or judgment, or a well-advanced court-supervised settlement process, is protectable by anti-suit injunction. Under the All Writs Act, an injunction requires "a threat...to the jurisdiction of the court," not just "to the plaintiff's continuing interest in prosecuting his lawsuit," and "parallel proceedings on the same *in personam* claims should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one that can be pled as res judicata in the other." *See Sea Containers Ltd. v. Stena AB,* 890 F.2d 1205, 1213 (D.C.Cir.1989).

Plaintiffs, however, alert this Court to numerous cases which recognize that an MDL court entertaining complex issues has the authority to be particularly vigilant and protective of its jurisdiction. "A principal purpose of § 1407 is to allow one judge to take control of complex proceedings..." *In the Matter of Orthopedic Bone Screw Products Liability Litigation,* 79 F.3d 46, 48 (7th Cir.1996). The Seventh Circuit has specifically recognized the necessity for a multidistrict court to exercise its power pursuant to the All Writ's Act to protect its jurisdiction:

> Ordinarily, the "aid of jurisdiction" exception to the Anti–Injunction Act applies only to parallel state in rem rather than in personam actions...There are, however, exceptions to this rule...Other courts have extended the exception to consolidated multidistrict litigation, where a parallel state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigations.

*Winkler v. Eli Lilly & Co.,* 101 F.3d 1196, 1202 (7th Cir.1996); *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998)("[T]he Anti–Injunction Act does not bar courts with jurisdiction over complex multidistrict litigation from issuing injunctions to protect the integrity of their rulings."); *In re Lease Oil Antitrust,* 48 F.Supp.2d 699 (S.D.Tex.1998) ("If an effort by the defendants to reach an inadequate or collusive settlement in state court is 'left unchecked,' then this court will be absolutely prevented from 'bring[ing] the litigation to its natural conclusion.' ...For these reasons the All Writs Act authorizes this Court to enter an injunctive order against the parties in order to preserve its jurisdiction over this MDL litigation.")

CIGNA also contends that the requested injunction is not "agreeable to the usages and principles of law," because it offends

---

**5.** The Anti–Injunction Act states:

A Court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgements.

28 U.S.C. § 2283.

the policy favoring settlements, comity between federal courts, and the policy against conflicting court orders.

CIGNA directs this Court's attention to *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952), which it claims stands for the proposition that when faced with overlapping federal actions, district courts should not adopt "rigid mechanical solution[s]" based on priority of initial filing, but rather determine whether to proceed with both actions or, given jurisdiction to do so, abstain or issue an injunction halting one, based on considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* at 183–84, 72 S.Ct. 219. CIGNA then asserts that the most universally recognized principle of "wise judicial administration" in the class action context is by favoring prompt and comprehensive settlements. It claims that because a comprehensive class settlement is now before the Illinois court, and proceedings in this case are far from settlement, that the overriding policy points only in one direction: that the Illinois proceeding should not be obstructed in any way.

Admittedly, in most instances, the issuance of an injunction would be in order to *protect* a settlement. Here, instead this Court seeks to *prevent* a settlement. This Court is well aware of the strong public interest favoring settlements. However, it cannot turn a blind eye to the underhand-ed maneuvers CIGNA took to obtain this settlement agreement. CIGNA snookered both this Court and Judge Murphy in Illinois in an obvious attempt to avoid this Court's jurisdiction. CIGNA settled the claims of this Court's Plaintiff class and yet seeks approval from another judge in Illinois without informing that judge, apparently, of the proceedings in this case.

Additionally, CIGNA makes no mention, in its discussion on whether an injunction would be "agreeable to the usages and principles of the law" of the entire spirit of and rationale behind the JPML and the MDL Rules.[6] How CIGNA can, with a straight face, argue to this Court that its maneuvering is agreeable to the usages and principles of law, is incredulous. CIGNA points to the policy favoring settlements because it is "wise judicial administration," but makes *no mention whatsoever* of the statute creating a Judicial Panel for the very *purpose* of consolidating proceedings and promoting judicial efficiency. Furthermore, class settlements are subject to a rigorous review of their fairness because of their impact on many parties.

■ CIGNA also claims Plaintiffs' requested injunction offends basic principles of comity, which mandate mutual respect and trust between district courts. CIGNA correctly states that this Court must operate on the basis of the assumption that all federal judges follow the law and protect the rights of the class members in accor-

---

6. Specifically, this Court would like to note that CIGNA is in violation of MDL Rule 7.5(e) which has been attached to various orders of this Court and each and every JPML order transferring and consolidating cases with MDL 1334, and which states:

    Any party or counsel in actions previously transferred under Section 1407 or under consideration by the Panel for transfer under Section 1407 shall promptly notify the Clerk of the Panel of any potential "tag-along actions" in which that party is also named or in which that counsel appears. CIGNA did not inform the MDL Panel of the pendency of the tag-along action it created in the Illinois federal court until December 6, 2002—after it had already received preliminary approval of the settlement and a full ten days after the removal was effectuated. The Court *will consider* more specific motions for sanctions, if appropriate, at a later time.

dance with Rule 23 of the Federal Rules of Civil Procedure. However, the JPML vested in this Court the authority to "streamline pretrial proceedings in these actions, while concomitantly directing the appropriate resolution of all claims." *See In re Managed Care Litigation*, 2000 WL 1925080 (Jud.Pan.Mult.Lit.2000). In order to follow the JPML's mandate, an injunction preventing CIGNA from proceeding with the settlement is necessary from the standpoint of the proper administration of justice. This injunction should *not* be interpreted as any indication of whether the settlement is indeed a fair one, but simply as to which judge has been vested with the authority to render that decision.

■ CIGNA alleges an inability to comply with conflicting orders and thus has a "complete defense" to efforts to enforce an injunction. *Newman v. Graddick*, 740 F.2d 1513, 1528 (11th Cir.1984). The Court, at the outset, completely rejects CIGNA's concerns over the potential for conflicting court orders. CIGNA cannot be permitted to use underhanded and questionable procedural means to avoid this Court's jurisdiction and then come before the Court complaining that it might be subject to conflicting court orders. Ordinarily, the inability to comply with a court's order is a complete defense. *Id.* However, an exception exists when the person charged is responsible for the inability to comply. *United States v. Asay*, 614 F.2d 655, 660 (9th Cir.1980).

As the Plaintiffs stated, in this case, the pleadings before the Illinois district court make clear CIGNA did not inform that judge of the pendency of the injunction motion or of the imminent hearing on that motion. CIGNA then consented to an order which directly conflicted with the relief sought in the injunction motion. This Court has no doubt, given CIGNA's recent activities, that CIGNA deliberately went before another court to create conflicting

court orders so that it could claim inability to comply with any order this Court might enter on the injunction motion. CIGNA created this situation, and cannot use the existence of the consensual Illinois order as a defense to entry of an order enjoining it from proceeding with that settlement.

Finally, CIGNA's argument that the requested injunction would not "fill the interstices of federal jurisdiction" is unconvincing. The basis of that argument is that because there is a proper procedure and numerous other ways for Plaintiffs to proceed to obtain their requested relief (i.e., intervene in the Illinois federal court proceeding, request transfer from the JPML, or object to the fairness of the settlement at the fairness hearing in the Illinois action), this injunction is not necessary. The JPML, even after a conditional transfer, would have to wait the appropriate time to hear objections to the transfer of the Illinois federal case as a tag-along case. Therefore, the JPML could not rule as a final transfer until the end of January. On the other hand, notice to all class members is expected to go out within one week. A speedy resolution of the issue is necessary where the harm is imminent.

**Federal Rules of Civil Procedure, Rule 65 Requirements**

CIGNA claims the prerequisites of Rule 65 of the Federal Rules of Civil Procedure must be met before this Court can issue an injunction. Under Rule 65, four prerequisites represent the minimal factors which must be addressed by the court before a preliminary injunction may be issued. These are:

(1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may

1344

cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.

*Hardin v. Houston Chron. Pub. Co.*, 572 F.2d 1106, 1107 (5th Cir.1978).

█ The Plaintiffs claim the type of relief sought in a typical Rule 65 preliminary injunction is to preserve the status quo of the proceedings until a merits determination of the case. To justify such early relief, the Rules impose strict requirements including a strong likelihood of success on the merits. Here, however, the relief Plaintiffs are seeking does not relate to the merits of the case, but rather the jurisdiction in which those merits will be decided. Because the type of injunction requested here does not fall within the scope of the typical Rule 65 injunction, Plaintiffs do not have to meet the Rule 65 requirements. However, this Court finds that, even if Plaintiffs were required to meet the prerequisites of Rule 65, they have done so here.

### Success on merits

CIGNA argues Plaintiffs are unable to demonstrate a likelihood of success on the merits because transfer is inappropriate under JPML precedent. Exclusive jurisdiction over the issue of whether to transfer an alleged "tag-along" case is vested with the JPML, therefore, to determine whether Plaintiffs are likely to succeed, this Court would have to determine whether the JPML would transfer the Illinois case, as a tag-along action, to this Court.

The relief requested in this motion is not a transfer of the *Kaiser* action to this Court, but rather an injunction against CIGNA, the question is whether Plaintiffs have a likelihood of success of this Court granting an injunction and not whether the JPML will likely transfer the *Kaiser* action to this Court. Based on the Court's previous detailed analysis of whether it

may, and should enjoin CIGNA from proceeding, it is quite clear Plaintiffs have a great likelihood of success on the merits of their motion. *See also American Horse Protection Ass'n v. Lyng*, 690 F.Supp. 40 (D.D.C.1988) (stating "it is clear that a federal court can enjoin the prosecution of an action where the same issues are presented in another federal court.")

### Irreparable Harm

CIGNA claims that the current settlement process in no way causes the Plaintiffs here irreparable harm because Plaintiffs remain free to seek a transfer from the JPML, to opt out of the *Kaiser* class, to move to intervene in the Illinois litigation and to move for a stay there or to raise objections to the settlement. The only harm Plaintiffs have complaint of is the potential for a final judgment incorporating the *Kaiser* settlement to have *res judicata* effect against them. That, according to CIGNA, is not cognizable irreparable harm.

Plaintiffs argue the harm suffered by Plaintiffs and class members will not be limited to claims against CIGNA, but will extend to all claims consolidated before this Court. Other Defendants will doubtless argue that the CIGNA settlement, regardless of its inadequacies, sets the standard for settlement. The *Kaiser* settlement will have the practical effect of limiting and hindering settlement of the encompassing issues before this Court, and of impeding the mediation already ordered by this Court. The *Kaiser* settlement denies Plaintiffs and class members even the possibility of industry-wide, coordinated or comprehensive relief which can be accomplished through multidistrict litigation. This Court is the only forum where Plaintiffs can obtain such relief.

Not only might the settlements reached be woefully inadequate because of the *Kaiser* action, but the Court also finds that if

it were to let CIGNA proceed in this manner, nothing would stop every other Defendant from following suit. They would each settle their claims in a state or federal court outside this Court's jurisdiction. What then, would be the point of consolidating all of the cases here and certifying a class? It would clearly cause irreparable harm to all Plaintiffs and class members in this litigation.

**Balancing of Hardships and Public Interest**

As this Court has previously stated, it recognizes the strong public interest in the finality of judgments and ensuring fairness of settlements reached. The Court also recognizes the potential injury to CIGNA of being placed in a position where it must determine between two conflicting court orders. However, also as previously stated, CIGNA does not appear before this Court with clean hands. If CIGNA had proceeded in a manner consistent with the MDL Rules, the Court is certain the *Kaiser* action would be before it, and this Court could determine the fairness of that settlement. Because the current situation is of CIGNA's own making, this Court will not hear complaints that it might be subject to conflicting court orders.

## IV. Conclusion

Conspicuously missing from CIGNA's citations to the law, and suggestions for a manner in which this Court should proceed, is a discussion of fairness. This Court must be efficient. This Court must exercise great discretion. Yet this Court must be just. In this Court's opinion, it is of the greatest public interest to ensure public trust in the judiciary. This trust comes from rendering *just* proceedings. The issuance of an injunction is necessary to render a just and fair proceeding.

The JPML has ordered that all cases relating to the improper payment to physicians be consolidated in this Court pursu-

ant to § 1407. To allow another federal court sitting in another Circuit to settle this entire action against one of the Defendants in the consolidated proceeding would effectively render the JPML's decisions and existence moot. This cannot be the correct interpretation of the law.

Therefore, this Court ENJOINS CIGNA, its attorneys Harkins & Cunningham, and any party acting in concert with CIGNA, from proceeding in any manner with the proposed settlement that has been preliminarily approved in the *Kaiser et al v. CIGNA Corp. et al,* Civil Action No. 02–1179–GPM, United States District Court for the Southern District of Illinois, without the express approval of this Court, and from contacting in any way the members of the class certified by this Court.